OPINION OF THE COURT
Millard L. Midonick, J.
The central issue in this proceeding is this: at what point does an “absolute and uncontrolled” discretion of trustees to withhold invasion of principal become an unreasonable abuse of that discretion?
The petitioners here, Guy Stillman and Dr. James Still-man, are grandsons of the testator James Stillman. They are income beneficiaries of two trusts under article seventh of the will of the testator. Each of them complains of the failure on the part of the trustees of their respective trusts to invade principal requested in 1977, particularly for $145,000 requested by Guy Stillman and $150,000 requested by Dr. James Stillman.
*103 Whatever interest the six children of Guy Stillman and the six children of Dr. James Stillman may have as remaindermen, they have been cited, and they have defaulted to the extent of the issues involved before me now. A contingent remainderman appears by counsel, who approves of the accounting in all respects and supports the trustees as not having abused their discretion to withhold principal invasions and as not having been imprudent in investment policies.
The testator James Stillman died in 1918 leaving one third of his residuary estate to his son, James A. Stillman, for his life, and provided that upon his death, which occurred in 1944, his issue should become income beneficiaries of equal shares of James A. Stillman’s trust. James A. Stillman’s trust commenced with a fund of approximately $9,000,000 in value in 1918. At the time of his death in 1944, this trust was split into four separate trusts as the will provided, for his four children, three grandsons and a granddaughter. Each of these four trusts was funded in 1944 with the amount of about $2,000,000. Each of the two trusts for the two complaining grandsons before me now is valued at approximately $8,500,000. (In 1977 Guy Still-man’s trust approximated $8,370,000 and Dr. James Still-man’s trust approximated $8,670,000.) From these, the two grandsons, petitioners, have derived income in excess of $300,000 annually in 1977 and in 1979 of approximately $425,000 annually, from each of their respective trusts.
Also in issue is the objection by the same two income beneficiaries, to the trustees’ account in respect to what proportion of each of these trusts should be devoted to income tax-free investments. Approximately one third of the principal of the trusts has been invested by this time in tax-exempt income-producing securities, which these beneficiaries complain is inadequate in proportion to the entire corpus. The income beneficiaries’ evidence places the tax-exempt income close to 20% of the total income. After deliberation, the court hereby rules favorably to the trustees whose judgment cannot be found to be improvident with ..respect to investment policies under the circumstances of this particular case. Essentially, the trustees have convinced the court that they have been fair to both *104 the income beneficiaries with respect to the amount and character of the income, including the proportion which is tax exempt, and they have been equally fair to the presumptive remaindermen and the contingent remainder-men who are more interested in the preservation and appreciation of the principal than in the size of the income. (2 Scott, Trusts [3d ed], § 183; Restatement, Trusts 2d, §§ 183, 232; cf. Redfield v Critchley, 252 App Div 568, affd 277 NY 336; Matter of Coyle, 200 Misc 421; Matter of Dwight, 204 Misc 204; Matter of Mendleson, 46 Misc 2d 960, 966.)
With respect to the most vigorously contested issue in this proceeding, we return now to the problem whether the trustees have acted correctly in refusing to invade princi>al of Guy Stillman’s trust to the extent of the $145,000 ast requested of them by him and to invade principal of Dr. James Stillman’s trust to the extent of the $150,000 ast requested of them by him.
In order to frame the problem, we turn to the invasion article of the will, paragraph tenth, which reads in its entirety:
“I. Upon any grandson of mine attaining the age of twenty-five years, during the continuance of a Trust hereunder for his benefit, I authorize and empower my said Trustees, if, in their absolute and uncontrolled discretion, they deem it advisable to do so, to convey, transfer and pay over to such grandson, out of the principal of the Trust, held for his benefit, property of the reasonable value, in the judgment of my said Trustees, of one-fifth, or of any less part, of the share so held for him.
“II. Upon any grandson of mine attaining the age of thirty years, during the continuance of a Trust hereunder for his benefit, I authorize and empower my said Trustees, if, in their absolute and uncontrolled discretion, they deem it advisable to do so, to convey, transfer and pay over to such grandson, out of the principal of the Trust, held for his benefit, property of the reasonable value, in the judgment of my said Trustees, of two-fifths, or of any less part, of the share so held for him.
“HI. Upon any grandson of mine attaining the age of thirty-five years, during the continuance of a Trust here *105 under for his benefit, I authorize and empower my said Trustees if, in their absolute and uncontrolled discretion, they deem it advisable to do so, to convey, transfer and pay over to such grandson, out of the principal of the Trust held for his benefit, property of the reasonable value, in the judgment of my said Trustees, of one-fifth, or of any less part, of the share so held for him.
“IV. Upon any grandson of mine attaining the age of forty years, during the continuance of a Trust hereunder for his benefit, I authorize and empower my said Trustees if, in their absolute and uncontrolled discretion, they deem it advisable to do so, to convey, transfer and pay over to such grandson, the whole or any part of the remainder of the principal of the Trust held for his benefit.”
The paramount consideration resolves itself to the basic intention of the testator concerning invasions and whether the trustees have deviated from the testator’s plan. (Matter of Flyer, 23 NY2d 579, 584; cf. Matter of Fabbri, 2 NY2d 236, 240.) The question here is whether the above language when read together with the entire instrument evidenced any condition for the invasion, such as need, or whether invasion was unconditional and equal to the right of petitioners to principal upon attaining various ages, or whether the trustees’ “absolute and uncontrolled discretion” was intended by the testator to be based upon considerations neither of maturity of the life beneficiaries alone, nor of need alone, but upon those and other additional circumstances which the trustees have unreasonably disregarded.
In the case at bar, principal was to be disbursed at ages 25, 30, 35 and 40, i.e., ages of maturity, if in their “absolute and uncontrolled discretion, they deem it advisable to do so”. These two grandsons have now attained the age of 62 in the case of Guy Stillman and of 76 in the case of Dr. James Stillman. Despite their advanced ages and obvious maturity, Dr. James Stillman has never received any principal of his $8,500,000 trust and Guy Stillman has received only $230,000 in 1974 of his $8,500,000 trust.
Upon receiving requests for invasion by each of these grandsons of the testator, the trustees used as. their crite *106 rion for decision a relatively restrictive standard as the basis on which to measure and consider the purposes for which each grandson wished to have this principal.
In 1974, Guy Stillman advised that he wished to buy land adjoining a plantation he owns in Hawaii in order to profit from sugar cane farming. The trustees proceeded to employ independent business advisors who warned that a nearby sugar mill was about to close and that the business of sugar cane farming would not be profitable as a result. Guy Stillman responded that he cojild use a distant mill profitably. He also informed the trustees that in case it would not prove feasible to plant sugar cane, he could resort to a cattle-feeding crop. The trustees granted his request, and he used the $230,000 to acquire some but not all of the land specified, and to fund a farming project on his Hawaiian property. The nearby mill thereafter closed as he had been warned, and he found that he could not profitably transport any sugar cane as he had told the trustees he had intended to do. After 1974 when he resumed his efforts, now in dispute, for further invasion about 1977, the trustees discovered that his cash flow problem stemmed from his having planted macadamia nut trees on his Hawaiian land rather than following either of the plans he had outlined in 1974. Since those trees had not come to production, his low tax write off and high upkeep costs were compelling him in 1977 to convert his home in Scottsdale, Arizona, into a commercial enterprise and to build another home with more moderate upkeep problems; he planned to use the $145,000 that he was requesting in 1977 for this purpose.
The trustees rejected the request for $145,000 in 1977 on the ground that Guy Stillman was able to manage without this money by using his own funds and by mortgage borrowing, and although this is disputed, perhaps on the further ground that he had shown fallible business judgment in respect to the use of the previous invasion money.
Similar criteria were used to reject Dr. James Stillman’s request for $150,000 since the trustees found on the basis of net worth, his income tax returns, and his own assertions, that he could manage the conversion of his beach *107 house in Texas into commercial purposes by using his own funds and by obtaining mortgage loans.
Apparently, no real consideration was given by the trustees to the essential plan of the testator to be derived from the terms of his will probated in 1918. Those purposes stand out quite clearly and the court finds that the intent of the testator to have been different from the standards that the trustees have been using in considering invasion. The purpose that the testator had in mind for his grandsons were those of a careful testator intending to protect his then immature grandsons (Guy was then en ventre sa mere, as yet unborn; James was then about 14) from creditors of every kind. As the years went by, the taxing authorities became one kind of potential creditor, perhaps the most depleting of all. This typical invasion language at ages 25, 30, 35 and 40, emphasizing uncontrolled and absolute discretion on the part of the trustees, constitutes more an urging of the trustees to invade than a restraint against invasion except for limited protective purposes. This is especially the case where a series of ages is set forth in the will for permitted partial cumulative distributions at which times the trustees are enabled to dispose to grandsons of an entire estate in stages culminating at age 40.
It is to be kept in mind that these trusts are generation-skipping trusts absolutely protected against a second and even a third estate tax by any government when passing from the testator’s son to his grandchildren and ultimately when passing from his grandchildren (current life tenants) to great-grandchildren. The Tax Reform Act of 1976 has altered this situation for wills executed after June 11,1976 (and even for wills executed before that date if the testator — not the beneficiaries, as here — dies after December 31, 1981). (Tax Reform Act of 1976, § 2006, subd [c], 90 US Stat 1879,1889, as amd by Revenue Act of 1978, § 702, subd [n], par [1], 92 US Stat 2763, 2935; US Code, tit 26, § 2601, note.) Wills executed before July 12, 1976 are “grandfathered” if no additions are made by way of codicil, or otherwise voluntarily, to the grandfathered testamentary trusts, if the testator dies before January 1, 1982. Consequently, the Tax Reform Act of 1976, as amended, does not *108 affect this will, so that no estate tax creditor can affect each generation to the extent that the principal of these trusts remains intact.
It would be therefore a matter of questionable judgment for these trustees or income beneficiaries to extract excessive amounts of principal, because upon the deaths of these income beneficiaries, their estates will be subject to estate tax on such principal whereas no estate tax will be due on the principal if the respective trust continues to hold the principal. Apparently, the income beneficiaries are well aware of this problem because they have been quite modest in their requests for invasion, and their personal net worth is relatively modest compared to each trust’s value of about $8,500,000. Indeed, Guy Stillman testified that his children are well cared for by his trust, but his personal net worth leaves his wife relatively less financially secure in the event of his death. He gives this concern for his wife as one reason why he requests $145,000 of invasion. He has gone ahead by other means, such as mortgaging, to build a home in Scottsdale, Arizona, without the help of the trustees’ invasion and that home cost him approximately $360,000. Presumably, the $145,000 he is asking for will reduce or eliminate such mortgage and increase his net worth by that relatively modest amount. He points out that $145,000 constitutes less than 2% of the principal of his trust.
Similar considerations seem to apply to Dr. James Still-man’s request which was also turned down by the trustees because of lack of need and because of his ability to finance his Texas beach house conversion into a commercial enterprise through other means. Indeed, he informed the trustees that he could and would go ahead with such plan, even if the trustees would not help him by a contribution of $150,000. He, in fact, so acted.
The two trustees who testified agree in effect that the amounts requested and the purposes of the requests were reasonable but were not needed and were not economically feasible to produce income. The difficulty with the trustees’ standards is that they do not conform with the plan set forth in the will of the grandfather of these income beneficiaries. It is quite clear that the trustees, one of which is an *109 important banking institution, are applying standards to these grandsons almost as though they were lending them money which is bound to be returned as in a banking transaction, or as though these income beneficiaries are themselves fiduciaries who are required to be prudent and to avoid speculative investments.
Clearly there was no such condition to the invasion intended by the decedent. Moreover, there is no duty on the part of Guy Stillman or Dr. James Stillman as envisioned by the will to be infallible in business transactions or to be prudent in the sense that they are protecting other people’s money as fiduciaries. It was their grandfather’s intention that they be reasonably comfortable as well as free of creditors, including creditors in the form of unnecessary tax liabilities. These two Stillman grandsons seem to have conducted their lives financially in such a way as to avoid such pitfalls and they have attained ages 62 and 76 with their relatively modest property intact.
They have not anticipated income or assigned income, nor are they being hounded by creditors of any sort.
The testator’s intention is further indicated by his refusal to permit any invasion of principal in favor of his granddaughters from their separate trusts, regardless of their age or maturity. Evidently, from his point of view in 1913 when this will was executed, he regarded any granddaughter as being prey not only to various creditors, but subject to pressure by her husband. If women can protect themselves today as well as men, indeed some even better, this does not alter the testator’s rigid views which echo from the second decade of the 20th century. He therefore forbade invasions for granddaughters. Forbidding such invasions is another factor indicating that he intended, absent exceptional situations, reasonable invasions for grandsons to the extent of at least modest invasions of principal by provisions for provisional substantial invasions at various ages.
As paragraph thirteenth of the will makes clear, the testator was trying to protect even income of the trust from creditors. There he adopted the strictest spendthrift clauses by forbidding any assignment or anticipation of *110 income by any beneficiary. If such acts were to be attempted, he instructed his trustees to pay income to the beneficiaries personally rather than to their assignee creditors, or to apply it for the best interests of the beneficiaries rather than to risk its falling into the hands of creditors, or even to pay income to other beneficiaries or dependents of beneficiaries under the will (of whom there may now be almost 100) rather than to such creditors.
The issue whether the three nonfamily trustees improperly delegated a veto power to block invasion, by deferring to the former trustee Alexander Stillman, is hereby found to be without basis in fact. Alexander Still-man is another grandson of the testator and brother of the two petitioning grandsons here. He too has asked for invasions and has been denied them in every instance. For this and other reasons in evidence the court finds that the former trustee Alexander Stillman did not have a veto power or excessive influence upon the other trustees. In the denial of invasions here in issue, all trustees have agreed except that the trustee Harry Davison has abstained due to the recency of his appointment (in 1977) vice Alexander Stillman. It is thus that the trustees have always acted as the law provides, in that a majority of trustees make any decision unless the trust instrument otherwise provides.
For all of these reasons the court hereby finds that the trustees quite innocently have misconstrued the testator’s will and therefore have abused so-called absolute and uncontrolled discretion to withhold principal in these two instances. “If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment.” (Restatement, Trusts 2d, § 187, Comment e; accord Matter of Emberger, NYLJ, Aug. 7, 1967, p 11, col 6, affd 31 AD2d 651, affd 25 NY2d 924; cf. Matter of Flyer, 23 NY2d 579; Matter of Martin, 269 NY 305, 310; Matter of Clark, 280 NY 155; Rezzemini v Brooks, 236 NY 184; Holden v Strong, 116 NY 471; 3 Scott, Trusts [3d ed], § 187.5.)
The trustees have overprotected these beneficiaries con *111 trary to the intention expressed by the testator in his will. That intention is essentially that invasion of principal shall be favorably considered, after stated ages of grandsons, if such invasion will, on balance, enhance the quality of the lives of such grandsons, by benefiting them rather than creditors of any kind.
The fact that the trustees have thus abused their discretion, but in good faith, makes it clear that there is no need to remove these trustees. The fine record of the trustees in enhancing the equity of these trusts while earning substantial income, also persuades the court of the wisdom of retaining their services as fiduciaries.
For all of these reasons the court finds that the trustees quite innocently have misconstrued this will and therefore have abused so-called absolute and uncontrolled discretion to withhold principal in these two instances. Standards for the trustees can be found in the will from which the testator’s intention was gleaned and in those factors that the court has taken into account in determining that the rejection of these last requests was unreasonable and arbitrary. Other means available to these beneficiaries can be a consideration but not a controlling one if a modest invasion request is presented and if the estate of the requesting income beneficiary does not then rival the size of the trust and thereby risk substantial estate taxes or other creditors. Nothing in this opinion, however, can be construed as compelling the trustees to comply with future invasion requests or demands, however moderate; this decision rules only upon the current requests, leaving future requests for invasion still subject to the absolute and uncontrolled discretion of the majority of the trustees, short of their unreasonably abusing their testamentary mandate.
By this result the court follows the mandate of the Court of Appeals, which, in reversing the Surrogate in Matter of Flyer (23 NY2d 579, 586, supra), remitted the matter to the Surrogate’s Court for further proceedings in accordance with that opinion. That opinion emphasized that “the trustee was privileged to take beneficiary’s independent income into account before invading principal” because that testator “made it quite plain that his children [re *112 maindermen] were his primary concern and any provision for his wife from trust principal, as opposed to income, was clearly secondary.” Contrariwise, the present testator clearly indicated that his grandsons were his primary concern in respect to provision from trust principal; one of these two grandsons was age 14 and the other was not quite born when the testator died in 1918, and no great-grandchildren, who were children of these grandsons, were then in being. The trustees are therefore not privileged to consider need as a controlling factor when deliberating about invasion for grandsons, but should weigh need together with their situation of debt and current and prospective tax debt risk, as well as the proposed size and use of the invasion as it relates to the over-all enhancement of the quality of the life of each of the grandsons. (Cf. Matter of Emberger, supra, where trustees’ “discretion” was overruled and invasion required for support and maintenance of a widow without regard to the widow’s personal income from sources other than the trust.)
With respect to the legal fees of the counsel for the trustees in the amount of $42,500 paid from each of the trusts of these two grandsons, each of them objects to the amount of the fees. The affidavits of services and the responses thereto of the counsel for the grandsons convince this court that a reasonable allowance of the fees should be $30,500 from each of the two trusts here in dispute, for the trustees’ attorneys, in view of the able legal efforts and expertise in advising these trustees for a period of more than 10 years and for preparation of the accountings for the period until the resignation of Alexander Stillman as trustee and for arranging for his replacement. Ninety-five parties had to be cited, and, among other expenses, outside accountants were paid by these attorneys from their own funds in the amount of about $5,500 for help in the preparation of this intermediate accounting in each of these two trusts, an aggregate of $11,000. Inasmuch as these attorneys have already been paid for these services in respect to each trust, in the sum of $42,500, this finding requires the restoration to these trusts of $24,000 overpayment of legal fees. This finding does not include any allowance of attorneys’ fees in respect to this litigation proper nor the prepa *113 ration therefor. Inasmuch as this court personally heard and read the evidence involving this current litigation, it is further ordered that the legal fees, and costs and disbursements therefor, shall be withheld until the attorneys for all parties shall present affidavits of services, and opposing affidavits if so advised, for my decision. Fees fixed herein may be taken into account in respect to such further allowances.
Counsel for the petitioning grandsons urge that legal fees in the current proceeding be paid by the trustees personally rather than from trust principal. Contrary to this position, it is hereby found and determined that the trustees were acting in good faith in relying on the strong language of the will giving them “absolute and uncontrolled discretion” in withholding principal invasions, and under the circumstances they were entitled to employ attorneys at the expense of the trusts regardless of their being overruled by this court in a closely balanced situation. (Cf. Ellis v Kelsey, 241 NY 374; Jessup v Smith, 223 NY 203; Matter of Berg, 91 Misc 2d 939.)
In view of these findings it is also plain that these trustees are entitled to statutory commissions despite objection of these income beneficiaries, because they have done a commendable job by way of investments and equity appreciation, and because they have in good faith pursued their decisional duties with respect to invasions even though they have been too restrictive in respect to the two current requests for principal invasions.