[No. 14986-9-II. Division Two. February 14, 1994.]

SUSAN F. AUSTIN, ET AL, *Respondents*, v. U.S. BANK OF WASHINGTON, *Appellant*.

*James R. Hermsen* and *Miller, Nash, Wiener, Hager & Carlsen,* for appellant.

*Franklin K. Fogg,* for respondents.

ALEXANDER, J. — U.S. Bank of Washington appeals a judgment of the Pierce County Superior Court in favor of Susan F. Austin, Sally Fogg Jones and William W. Fogg on their claim that U.S. Bank, acting as a trustee, breached a fiduciary duty it owed to them, as remainderpersons of a trust established by their grandfather, by wrongfully disbursing funds from the trust. Austin, Jones and Fogg cross-appeal, contending that the trial court erred in failing to include, as damages, an amount for the interest that the wrongfully disbursed funds would have earned if retained in the trust corpus. They also assert that the trial court erred in determining the amount of attorney's fees and costs the Bank should be required to pay to them by way of judgment. We affirm in part and reverse in part.

In his last will, James M. Wade devised his entire estate to Old National Bank of Washington,[1] in trust. The will provided, in part, for payments by the trustee to Wade's sister, Mrs. W.D. Lawrence, as follows:

> The trustee shall pay . . . $100.00 per month to my sister, MRS. W. D. LAWRENCE, of Trenton, Tennessee for the remainder of her natural life, and such additional sums therefrom as may be required for any emergency or need, in the sole discretion of my trustee.

---

[1]The Old National Bank of Washington is a predecessor of U.S. Bank of Washington. For ease of understanding we have referred to both banking corporations as U.S. Bank.

In addition the will provided that the remainder of the net income of the trust was to be paid out as follows:

> To pay the remainder of the net income therefrom to or for the use and benefit of my daughter, SAMMIE WADE GRAHM, my granddaughter, SUSAN FOGG AUSTIN, my granddaughter, SALLY FOGG JONES, and my grandson, WILLIAM W. FOFF, as may be deemed advisable by my trustee for the maintenance and support of such persons. I expressly direct that such distribution shall be made to such persons only when they are in actual need of income for their maintenance, support and medical expenses and that the trustee shall take into consideration other income available to them, particular[l]y income from the ELOUISE D. WADE trust. . . .

The trust was to terminate upon the death of Wade's daughter, Sammie Wade Graham,[2] at which time the corpus of the trust was to be divided into equal shares and distributed to Wade's grandchildren, Susan F. Austin, Sally F. Jones and William Fogg, the children of Sammie Wade Graham.[3]

On December 10, 1979, Lawrence's attorney in Tennessee, Gayle Malone, wrote to U.S. Bank, asking that Lawrence's monthly payment from the trust be increased from $100 to $500 per month. Attached to Malone's letter was a letter from Lawrence's doctor stating that Lawrence had severe arthritis, diverticulitis, and a hiatal hernia. The doctor concluded:

> In my opinion she needs some household help. Due to her physical ailments, age, and the fact that she does live alone makes it virtually impossible for her to meet all the problems that occur.

An assistant vice president of U.S. Bank responded to Malone's letter and indicated that the Bank did "not want to appear arbitrary", but that "it would help us if before approving this additional payment we had knowledge of her other sources of income and her expenses".

---

[2]Sammie Wade Graham is referred to in the will as Sammie Wade Grahm. Because the trial court referred to her as Graham, we have used that spelling throughout this opinion.

[3]The approximate value of the property in the trust was: $368,000 in 1980; $385,900 in 1983; $374,000 in 1984; $374,000 in 1985; $376,000 in 1986; $395,840 in 1987; and $373,000 in 1988.

Malone responded to the Bank's letter on January 16, 1980, with another letter in which he outlined Lawrence's financial situation as follows:

| Income per year | | Expenses per year | |
|---|---|---|---|
| S. S. payments | $1940.40 | Dr. bills | $2000.00 |
| Payments from estate | 1200.00 | Hospitalization | 1500.00 |
| Dividends | 5000.00 | Food & Medicine | 3000.00 |
| | | Property Taxes | 300.00 |
| | | Utilities | 1300.00 |
| | | House maintenance | 410.00 |
| Total | $8140.00 | Total | $8510.00 |

Malone indicated, further, that Lawrence's dividend income was "from stocks she inherited from another brother, Bruce Wade." Malone said that those stocks produced "dividend payments [which] fluctuate from $2000 to $5000 per year". Malone also stated that Lawrence's Medicare payments "have about reached the limitation of payment" and that "[t]he household help she has need of would eliminate most of the required hospitalization". Finally, Malone noted that Lawrence "is seventy-six years of age and has no relatives here or anyone to be attentive to her."

Relying upon Malone's letter, the Bank's trust administrative committee[4] approved the $400 monthly increase sought by Malone on behalf of Lawrence. Several members of the committee later testified that the $400 increase was considered permanent, and that no provision was made for further review because of Lawrence's advanced age and medical problems.

U.S. Bank sent monthly statements regarding the trust to Austin, Jones and Fogg, as well as to their mother, Sammie Wade Graham. Austin, Jones and Fogg all noted that the payment to Lawrence from the trust had increased but they questioned the amount of the payments amongst themselves because they had an impression, largely due to "family lore", that Lawrence was wealthy and, thus, not needy. Although

---

[4]The committee was composed of a lawyer/director, and senior trust officers who had "considerable experience in trust administration". The approval process involved review of the recommendation of the trust officer assigned to that trust, and other information supplied by the trust officer.

Austin, Jones and Fogg had had little contact with Lawrence, Jones had visited Lawrence in Tennessee in 1972 and concluded from that visit that Lawrence was financially "comfortable".

On January 10, 1986, Malone again wrote to U.S. Bank, on behalf of Lawrence, requesting an additional $500 per month increase for his client. Malone averred that although Lawrence's income was the same as in 1980, Lawrence had recently been hospitalized for a number of weeks and "[h]er required additional expense for medical and self care does now exceed $1000.00 per month." Again, Malone's letter was accompanied by a letter from Lawrence's doctor, which stated: "It is my opinion that Mrs. Lawrence is likely to have expenses in excess of $1000.00 per month for an indefinite period of time."

Relying upon these letters, U.S. Bank's trust committee approved the requested increase. This action brought the total payment to Lawrence from the trust up to $1,000 per month.

In early May of 1986, Fogg called U.S. Bank and expressed his disagreement with the Bank's decision to increase payments to Lawrence. Fogg indicated to U.S. Bank that it was his belief that Lawrence had "plenty of money". Austin also called the Bank, expressing similar concerns and indicating that she understood Lawrence to be "well off".

On September 15, 1988, Sammie Wade Graham died and, consequently, the trust was to be divided into equal shares and distributed to the grandchildren, Austin, Jones and Fogg, according to the terms of Wade's will. U.S. Bank asked Lawrence, who was now represented by attorney Richard Gossum, to provide detailed financial information to assist it in making a final distribution of the remaining trust corpus.[5] Gossum responded and described Lawrence's assets as follows: (1) $157,105.20 in Exxon stock; (2) $1,705 in Consolidated Natural Gas stock; (3) $6,156 in Citizens Bank stock; (4)

---

[5]Final distribution payments were eventually made on June 20 and 21, 1989, as follows: Jones, $118,957.10; Austin, $75,299.34; and Fogg, $6,305.14.

$2,080 in Santa Fe Southern Pacific Corp. stock; (5) $93,277 in certificates of deposit; (6) $9,500 "Cash on Hand or in Banks"; and (7) a home valued at $35,000.

On October 17, 1988, Austin, Jones and Fogg requested information from U.S. Bank about the basis for its decision to increase Lawrence's payments. U.S. Bank responded by sending each of them a letter indicating its refusal to release any such information, claiming that the requested information was confidential and could only be released with Lawrence's consent. U.S. Bank's letter also expressed its intent to continue to pay Lawrence $1,000 per month by "creating an annuity", notwithstanding termination of the trust. It explained its decision was due in part to the fact that, according to the Bank's estimation of current health costs, Lawrence's assets would be completely depleted within 4 years.

On August 24, 1989, Austin, Jones and Fogg filed suit against U.S. Bank in Pierce County Superior Court, alleging that it breached a fiduciary duty it owed them, and was negligent in increasing Lawrence's monthly payments.

Both U.S. Bank and Austin, Jones and Fogg moved for summary judgment. U.S. Bank's motion, which was primarily based upon its assertion that the statute of limitations had run on the Plaintiffs' claim, was denied. The motion made by Austin, Jones and Fogg was granted in part, the hearing judge concluding that U.S. Bank had abused its discretionary powers under the trust instrument by increasing the payments to Lawrence. In reaching that determination, the court said:

> the objectives of the trust clearly stated were: One, to provide Mrs. Lawrence with $100 a month and, Two, in the sole discretion of the trustee to provide additional sums if required by any emergency or need. That discretion is premised or is conditioned upon a showing of emergency or need. I believe that a sufficient inquiry clearly was not made and that the trustee abused their discretionary powers in arbitrarily making these payments in the sense that they didn't make a reasonable or sufficient inquiry as to her ability to meet these expenses herself.

The hearing judge concluded, however, that questions of fact remained relative to the Bank's defense of lack of causation and its affirmative defense of the statute of limitations. In that regard, the trial court stated:

> The burden of proof lies with the defendants as to: 1) whether plaintiff[']s claim is barred in whole or in part by the statute of limitations, and 2) defendant[']s claim that their failure to investigate Lucille Lawrence[']s need was of no consequence because a reasonable inquiry would have justified the need or emergency as required by the Trust Instrument.

At the ensuing bench trial,[6] William Fogg testified as to his calculations regarding the effect that the increased payments had had on the trust corpus. Fogg testified that the total of the monthly payments to Lawrence that exceeded $100 per month, $57,600, would have earned approximately 9.16 percent compound interest if left in the trust corpus. The trial court admitted Fogg's handwritten calculations regarding compound interest over the Bank's objection that Fogg was not a financial analyst or accountant.

Ultimately, the trial court again determined that U.S. Bank abused its discretion as trustee and it awarded Austin, Jones and Fogg a judgment for $57,600, a figure that was equal to the total of all of the payments to Lawrence in excess of $100 per month. In determining the amount of the judgment it did not accept Fogg's compound interest calculations, reasoning as follows:

> Now, with regard to the issue of interest or earnings on these moneys, I am not satisfied . . . that the plaintiff has met their burden of proof in that regard. I appreciate William

---

[6]In denying U.S. Bank's motion to reconsider its order granting partial summary judgment, the trial court stated: "The purpose of the trust was not to deplete the trustor's estate and enhance [the sister's] estate. . . .

". . . the trustee knew at the time that there were the existence of stocks. The trustee didn't know how many shares, the trustee didn't know what value was placed on those stocks, so either she had the $300,000 or at least the assets that were valued at $300,000 in 1980, or she was able to create that estate during the period of time that the trustee continued to make these payments without subsequent inquiry with regard to need.

". . . .

"And so, with regard to the issue of whether or not the trustee violated or abused its discretion, the Court is denying the motion to reconsider."

Fogg's effort but I am satisfied that the cross-examination by Mr. Hermsen frankly perforated the approach sufficiently that I don't believe that it is a viable basis for this Court to impose any damages for earnings or interest on those moneys.

The trial court determined, however, that the Plaintiffs' claim to recover excess payments to Lawrence from the trust was a "liquidated" claim, thus entitling them to prejudgment interest. It then gave counsel for U.S. Bank a choice between agreeing to pay 12 percent statutory interest (presumably pursuant to RCW 19.52.010), or 9 percent simple interest. Given that choice, U.S. Bank agreed to accept 9 percent simple interest on the $57,600 judgment. Finally, the trial court added $6,000 in attorney's fees and $376 in costs to the judgment against U.S. Bank.

I

## U.S. BANKS APPEAL

A. Did the Trustee's Failure To Adequately Investigate the Financial Situation of Lawrence Amount to an Abuse of Discretion?

### 1. Summary Judgment

U.S. Bank contends that the trial court erred in granting the motion of Austin, Jones and Fogg for summary judgment. In granting their motion the trial court concluded that there was no factual issue over the Plaintiffs' contention that U.S. Bank abused its discretion by failing to adequately investigate Lawrence's asset base before increasing payments to her from the trust. We conclude that it is unnecessary for us to address the propriety of the summary judgment order. The Plaintiffs did not rely on the order at trial and elected, instead, to present evidence at trial consistent with the submissions presented to the trial court at the time the summary judgment motion was heard. The case, thus, was tried as if there had been no such order and the court reached its decision that U.S. Bank abused its discretion, based on the evidence adduced at trial.[7]

---

[7] We note, however, that U.S. Bank did not dispute on summary judgment that (1) it requested only income/expense information from Lawrence; (2) its standard procedure was to not ask for full disclosure of an income beneficiary's

## 2. Challenges to Findings of Fact and Conclusion of Law Regarding Abuse of Discretion

U.S. Bank challenges the trial court's findings of fact 5, 9, and 12 which provide in pertinent part:

5. In January, 1980, at Mrs. Lawrence's request, made through an attorney, the trustee increased the monthly payment by $400, to $500; . . .. The trustee made no effort to determine the true state of Mrs. Lawrence's finances before making the discretionary additional payments, made no provision for periodic review of Mrs. Lawrence's need, and did not thereafter inquire as to her finances or need. . . .

. . . .

9. In January, 1986, the attorney requested a further increase of $500 in the monthly payments, . . .. [T]he trustee granted the $500 increase without any inquiry as to Mrs. Lawrence's asset base or other criteria of need.

. . . .

12. As a result of the two increases, the defendant did pay to Lucile [sic] Lawrence over and above the $100 allowance a total principal sum of $57,600.00. Mrs. Lawrence did not need the funds so paid to her, as contemplated by the trust instrument.

■ Although U.S. Bank presented some evidence that was contrary to these findings, they are clearly supported by substantial evidence. *See Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 730 n.1, 853 P.2d 913 (1993) ("[a]n appellate court will not overturn a trial court's finding of fact if it is supported by substantial evidence in the record."). U.S. Bank's argument that the trial court "rejected uncontroverted credible evidence, or capriciously disbelieve[d] uncontradicted evidence", is unavailing. Indeed, the trial court's findings and conclusions reflect the trial court's acceptance of the Bank's evidence that: (1) it did not consider Lawrence's assets; and (2) U.S. Bank's policy is to consider only income and expenses.

U.S. Bank also argues that the challenged findings of fact do not support its conclusion of law 3, which provides, "[t]he defendant abused its discretionary powers under the trust instrument in making the additional payments to Mrs. Lawrence."

---

assets; and (3) even if it had knowledge of Lawrence's assets, it would have approved the payments that were ultimately made to Lawrence.

■ ■ In addressing that question, we observe that the trustee's primary duty is to carry out the settlor's intent. Our fundamental purpose, therefore, is to determine the settlor's intent from the terms of the trust instrument. Where, as here, the instrument vests discretion in the trustee, the courts will not interfere with the exercise of that discretion, except to review for abuse. *Templeton v. Peoples Nat'l Bank*, 106 Wn.2d 304, 309, 722 P.2d 63 (1986); *Peoples Nat'l Bank v. Jarvis*, 58 Wn.2d 627, 630, 364 P.2d 436 (1961).

Findings of fact 5 and 9 reflect that U.S. Bank made very little effort to determine the true status of Lawrence's financial condition before it increased the payments to her. In light of those findings, we must determine to what extent the trustee was required to take the income beneficiary's assets into account before increasing payments to her. According to the Restatement: "It is a question of interpretation [of the trust instrument] whether the beneficiary is entitled to support out of the trust fund even though he has other resources. The inference is that he is so entitled." Restatement (Second) of Trusts § 128 comment *e* (1959).

■ ■ U.S. Bank contends that a trustee abuses its discretion only when it acts arbitrarily, in bad faith, maliciously, or fraudulently, citing *Occidental Life Ins. Co. v. Blume*, 65 Wn.2d 643, 648, 399 P.2d 76 (1965). We agree with that general statement. It is also true, however, that a trustee can abuse its discretion in circumstances where it should reasonably consider the nature and extent of the beneficiary's financial resources before increasing payments to an income beneficiary. *In re Estate of Larson*, 58 Wn.2d 673, 682, 364 P.2d 494 (1961). "[A trustee] may be guilty of an abuse of discretion where he pays the beneficiary more than could reasonably be thought necessary for his support." 3 Austin W. Scott & William F. Fratcher, *Trusts* § 187.2, at 35-36 (4th ed. 1988).[8] In determining whether an

---

[8]The authorities are somewhat divided on this topic, depending, of course, on the language of the particular trust document. Courts in some states have found a duty on the trustee's part to consider other financial resources of the

abuse of discretion has occurred, we find guidance in the official comments to the Restatement, which provide:

> *d. Factors in determining whether there is an abuse of discretion.* In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

Restatement (Second) of Trusts § 187 comment *d* (1959). *See Waits v. Hamlin*, 55 Wn. App. 193, 201, 776 P.2d 1003, *review denied*, 113 Wn.2d 1025 (1989).

We will address each of the above factors mentioned in the Restatement commentary. First, the trust instrument gave U.S. Bank the power to increase its payments to Lawrence "as may be required for any emergency or need, in the sole discretion of my trustee." Second, the purpose of the trust was to provide for Lawrence's "emergencies" or "needs", not to enhance her estate to the detriment of the three grandchildren who were the remainderpersons of the trust. Third, the nature of the U.S. Bank's power to increase payments to Lawrence was specifically limited to cases of "emergency" or "need". As for the fifth factor, U.S. Bank had no motive to exercise or refrain from exercising its power, except perhaps "administrative efficiency". Sixth, there did not appear to be a conflict of interest between U.S. Bank and the remainderperson grandchildren until after U.S. Bank had increased its payments to Lawrence without a proper investigation.

---

beneficiary. *In re Trust Estate of Wills*, 8 Ariz. App. 591, 448 P.2d 435 (1968); *In re Trust of True*, 158 So. 2d 571 (Fla. Dist. Ct. App.), *cert. denied*, 165 So. 2d 463 (Fla. 1964); *Devine v. Cote*, 109 N.H. 235, 248 A.2d 77 (1968). Other courts have found no such duty. *In re Coats Trust*, 581 S.W.2d 392 (Mo. Ct. App. 1979); *In re Estate of Stillman*, 107 Misc. 2d 102, 433 N.Y.S.2d 701 (Sur. Ct. 1980); *Kuykendall v. Proctor*, 270 N.C. 510, 155 S.E.2d 293 (1967).

Finally, we consider the fourth factor, which requires exposition at greater length: The existence and nature of an "external standard of reasonableness" for U.S. Bank's conduct. As we have observed above, the trial court found that U.S. Bank made very little inquiry into Lawrence's finances or need before increasing her monthly payments. Furthermore, as the trial court noted, U.S. Bank could have sent a very simple form to Lawrence's attorney in 1988 requesting disclosure of her "Sources of Income". Instead, it elected to rely on the statement of a third person, Lawrence's attorney, who may not have been fully aware of her financial situation. Having failed to make adequate inquiries or investigation, U.S. Bank cannot claim to have met an "external standard of reasonableness".

We also agree with the trial court that a trustee should not increase trust payments based upon "need" or "emergency" where the beneficiary has accumulated assets that are generating a low level of interest income, or no income at all.[9] In our judgment a trustee, in determining a beneficiary's "need" or "emergency", has a duty to consider undisclosed assets which are not reasonably required to sustain the beneficiary's standard of living or which are producing income (*e.g.*, stocks and certificates of deposit).

We are satisfied, after consideration of the six Restatement factors, that the trial court did not err in concluding that U.S. Bank breached its fiduciary duty by increasing Lawrence's monthly payment.

B. Burden of Proof of Causation.

U.S. Bank contends, additionally, that the trial court erred in placing the burden on it to prove that it did not cause the grandchildren's $57,600 loss. The Bank correctly argues that the Plaintiff beneficiaries are required to prove every element of their prima facie case, including causation.

---

[9]We find the trial court's hypothetical involving a trust beneficiary who had $3,000 of cash secretly stored in a mattress particularly persuasive. U.S. Bank's policy of only requiring information on income and expenses would increase the payments to that "needy" beneficiary despite the hidden $3,000. This is so even though liquidation of the hidden $3,000 would not reduce the beneficiary's income or unreasonably affect the beneficiary's standard of living.

The trial court's "Judgment and Order on Motion for Reconsideration and Cross Motions for Summary Judgment" provided:

As to plaintiffs' first cause of action (relating to payments to Lucille Lawrence), the court finds that U. S. Bank failed to investigate adequately Lucille Lawrence's asset base before increasing payments to her.

We are satisfied that this ruling acknowledged that Plaintiffs had made out a prima facie case that U.S. Bank caused the Plaintiffs to suffer a $57,600 loss. However, once a plaintiff establishes a prima facie case against a trustee, the burden of proof is then on the defaulting trustee clearly to disestablish the causal connection between default and loss to the beneficiary, rather than the contrary. *See Branch v. White,* 99 N.J. Super. 295, 313, 239 A.2d 665, 674 (citing *Harris v. Perl,* 41 N.J. 455, 464-65, 197 A.2d 359 (1964)), *cert. denied,* 51 N.J. 464 (1968); *see also Estate of Stetson,* 463 Pa. 64, 84, 345 A.2d 679, 690 (1975); *Nedd v. United Mine Workers,* 556 F.2d 190, 212 (3d Cir. 1977), *cert. denied,* 434 U.S. 1013, 54 L. Ed. 2d 757, 98 S. Ct. 727 (1978); George G. Bogert & George T. Bogert, *Trusts and Trustees* § 871, at 123-24 (2d rev. ed. 1982). Accordingly, the trial court did not err in placing the burden of proof upon U.S. Bank to show lack of causation.[10]

We are not unmindful of U.S. Bank's assertion that its failure to properly investigate Lawrence's assets did not cause any damage to the Plaintiffs because the Bank would have exercised its discretion to increase her monthly payments, even if it had received accurate information. U.S. Bank stresses its evidence that it would have been imprudent for it to require Lawrence to deplete her assets, even if it had known of all of them, prior to approving the increased payments. Unfortunately for U.S. Bank, the trial court's findings foreclose that argument. As we have observed, the trial court's finding of fact 12, to the effect that Lawrence did not "need" the additional funds paid to

---

[10]Again, as we have noted, the trial court's determination on summary judgment that the Bank abused its discretion was relitigated at trial.

her by the Bank, was supported by substantial evidence.[11] That being the case, any payment to her in excess of $100 per month, as required by the trust instrument, was not consistent with the settlor's intent and was, as the trial court concluded, damaging to the Plaintiffs.

C. Challenges to Trial Court's Findings of Fact Regarding Statute of Limitations.

■ U.S. Bank contends that the trial court erred in entering certain findings of fact and a conclusion of law that "no part of the plaintiff's [sic] action is barred by the statute of limitations". Appellate courts review findings of fact solely to determine if they are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law. *See Nordstrom Credit, Inc. v. Department of Rev.*, 120 Wn.2d 935, 845 P.2d 1331 (1993); *Tacoma v. State*, 117 Wn.2d 348, 361, 816 P.2d 7 (1991); *American Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990); *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978).

Here, the applicable statute of limitations provides, in pertinent part, as follows:

> (1) Any action against the trustee of an express trust, excluding those trusts excluded from the definition of express trusts under RCW 11.98.009, but including all express trusts, whenever executed, for any breach of fiduciary duty, must be brought within three years from the earlier of (a) the time the alleged breach was discovered or reasonably should have been discovered, (b) the discharge of a trustee from the trust as provided in RCW 11.98.040, or (c) the time of termination of the trust or the trustee's repudiation of the trust.

RCW 11.96.060(1). U.S. Bank essentially contends that the trial court erred in not finding that Austin, Jones and Fogg knew, or should have known, of its alleged misconduct before August 24, 1986. Consistent with that contention it assigned error to the trial court's findings of fact 17, 18, and 19, which are as follows:

[11]Significantly, Lawrence's cash assets increased throughout the years she was a beneficiary of the trust. As noted above, the cash assets exceeded $100,000 in 1988.

17. None of the plaintiffs were well acquainted with Mrs. Lawrence, and none of them had any information as to her financial situation or her health before the summer of 1987, although they believed her to be "comfortable".

18. At a Wade family reunion in Wenatchee in mid-1987, William Fogg, one of the plaintiffs, learned from a member of the family who was acquainted with Mrs. Lawrence, that she was very well off financially.

19. Susan Austin and Sally Jones, two of the plaintiffs, first learned that Mrs. Lawrence was well-off financially from a member of the Wade family at Sammie Wade's (Grahm's) funeral services on or about September 19, 1988.

In our judgment, there is substantial evidence in the trial record to support each of these findings. These findings, in turn, support the trial court's conclusion of law.

D. Fees and Costs.

U.S. Bank challenges the trial court's award of $6,000 in attorney's fees to Austin, Jones and Fogg. It asserts that the Plaintiffs utterly failed to document their claim for fees. In determining the amount of fees, the trial court stated:

> Now, just for the purposes of the record, I have been privy to much of what's gone on in this case because the matter has been before me on a regular basis. And given my right to exercise my discretion, that is what I think a reasonable fee is, considering all matters.

RCW 11.96.140 permits the trial court, in its discretion, to order the payment of "costs, including attorneys fees, to be paid by any party to the proceedings or out of the assets of the estate, as justice may require." Appellate courts review a trial court's award of attorney's fees for abuse of discretion. *See, e.g., Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987).

Although we are satisfied that the trial court did not abuse its discretion in making an award of attorney's fees to the Plaintiffs, we are not able to say that it did not abuse its discretion in setting the fees at $6,000. There is, as U.S. Bank asserts, nothing in the record to indicate what the trial court relied on in establishing the fees at $6,000. While that amount would not appear to be unusual for a trial of a case that had the complexities present in this case, the fee

award is more than nominal. It, therefore, should be based on more than just estimation or conjecture. Here, as U.S. Bank points out, there was little in the record to support the award, the Plaintiffs submitting only a declaration and a memorandum. There were no affidavits or time sheets of Plaintiffs' counsel to support their request for fees. On remand, the trial court should redetermine the amount of fees. At that time counsel for the Plaintiffs will have the opportunity to make submissions to support their request.

U.S. Bank also challenges the trial court's award of $226 in photocopying costs incurred in reproducing Lawrence's financial documents. U.S. Bank points out that the photocopies were not admitted in evidence at trial. The Plaintiffs concede the point but note that compilations of the photocopied information were admitted.

 Trial courts have the discretion to award costs to prevailing plaintiffs. The term costs is defined to include:

> (5) Reasonable expenses, exclusive of attorneys' fees, incurred in obtaining reports and records, which are admitted into evidence at trial or in mandatory arbitration in superior or district court, including but not limited to medical records, tax records, personnel records, insurance reports, employment and wage records, police reports, school records, bank records, and legal files;

RCW 4.84.010(5). In our judgment the cost of photocopying may properly be considered a cost when compilations of the photocopies were admitted. We affirm the trial court's award of this item of costs.

## II

### CROSS APPEAL

A. Interest.

Austin, Jones and Fogg challenge the trial court's refusal to accept the interest calculations that William Fogg testified to at trial, arguing that they were entitled, as a part of their damage claim, to 9.16 percent compound interest as the amount of interest that $57,600 would have yielded had it not been paid out of the trust corpus during the period of time at issue. We agree.

█ █ Damages must be proved with reasonable certainty. *See Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993). Plaintiffs are obligated to present only the "best evidence available", so as to prevent speculation and conjecture. *See Seattle Western Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 6, 750 P.2d 245 (1988). We review a trial court's decision regarding interest on a claim for breach of duty by a trustee for abuse of discretion. *See* George G. Bogert & George T. Bogert, *Trusts and Trustees* § 863, at 48-49, 52 (2d ed. rev. 1982).

█ The Restatement (Second) of Trusts provides that a trustee is liable for interest as follows:

> (1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest at the legal rate or such other rate as the court in its sound discretion may determine, but in any event he is chargeable with interest actually received by him or which he should have received.

> (2) Where the trustee is chargeable with interest, he is chargeable with simple and not compound interest, unless

> . . . .

> (c) it was his duty to accumulate the income.

Restatement (Second) of Trusts § 207 (1959). Significantly, the official commentary on subsection (2) of Restatement (Second) of Trusts § 207 (1959) indicates as follows:

> If the trustee is under a duty to reinvest interest received by him and accumulate *it for the beneficiary, and fails to do so, he is chargeable with compound interest,* since if he had not committed a breach of trust he would have received compound interest.

(Italics ours.) This comment is on point here, since the Bank had the duty to accumulate and reinvest the income from the extra payments erroneously made to Lawrence. *See also* Illustration at page 470 of Restatement (Second) of Trusts § 207 (1959); Austin W. Scott & William F. Fratcher, *Trusts* § 205 (4th ed. 1988); George G. Bogert & George T. Bogert, *Trusts and Trustees* §§ 862-863 (2d rev. ed. 1982).

█ Based on these authorities, we conclude that the trial court erred in awarding the Plaintiffs only 9 percent

simple interest, rather than compound interest.[12] In making that determination, we are aware that William Fogg only *estimated* that the $57,600 would have earned *approximately* 9.16 percent if it had been left in the trust. Here, however, absolute mathematical certainty is not required.

> Stating the account with periodic rests, and compounding interest, is only a convenient mode, adopted by the court to charge the trustee with the amount of profits supposed to have been made by him in the use of the money; where the actual amount of profits, which he has made, beyond simple interest, cannot be ascertained.

Bogert & Bogert, *Trusts and Trustees* § 863, at 55-56 (quoting *Utica Ins. Co. v. Lynch*, 11 Paige Ch. 520, 524 (1845)). After reviewing Fogg's handwritten calculations and the record at trial, we conclude that Fogg correctly used "book value" to calculate compound interest, and that the sole uncertainty in the 9.16 percent compound interest figure was that the monthly yield rates used in the calculation were not sufficiently close together to produce an accurate mean average yield rate. Any such calculation of compound interest will be, to some extent, an approximation. We, therefore, reverse the trial court's award of 9 percent simple interest on the payments to Lawrence and award 9.16 percent compound interest.[13]

Austin, Jones and Fogg contend, also, that the trial court erred in not awarding 12 percent statutory prejudgment interest. They rely on RCW 19.52.010, which provides, in pertinent part:

> Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no *different rate* is agreed to in writing between the parties . . ..

Courts have interpreted RCW 19.52.010 to apply only when a claim is "liquidated", *i.e.*, a claim:

---

[12]We note, also, that U.S. Bank conceded at trial that if the Plaintiffs had succeeded in proving the amount of compound interest at issue, then the Bank would have been obligated to pay it.

[13]Perhaps it goes without saying that this rate is not to be applied to a lump sum, but to each overpayment to Lawrence from the date it was made.

where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.

*Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968); *see also Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986); *Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 176, 273 P.2d 652 (1954).

The Plaintiffs argue that the increased payments to Lawrence in the total amount of $57,600 constituted a "liquidated" claim in that it was readily calculable once the Bank was found liable for making the overpayments. Their argument may be valid as far as it goes, but it overlooks one crucial thing: The correct calculation of the Plaintiffs' damages already includes an element of interest. As discussed above, the Plaintiffs established, through William Fogg's testimony, that they are entitled to compensation for their loss of use of the excess payments from the trust corpus to Lawrence. Plaintiffs showed, in other words, that had the trust retained those payments, they would have generated a return of 9.16 percent compound interest. To award, in addition to that rate of interest, the claimed prejudgment interest, would be to countenance a double recovery. The trial court seems to have recognized this fact when it awarded Plaintiffs interest "in lieu of liquidated damages".

B. Attorney's Fees at Trial and on Appeal.

Austin, Jones and Fogg argue that the trial court's award of $6,000 for attorney's fees was "unreasonably low". However, they cite no authority to support their argument. Furthermore, as discussed above, the trial court is to reconsider the amount of fees to be awarded on remand.

Austin, Jones and Fogg also seek costs on appeal, including a "reasonable attorney's fee". Again, they have made no argument and cited no authority to support their request for fees, as required by RAP 18.1(b). Consequently, we deny their request. *See Hommel v. Thweatt*, 67 Wn. App. 135, 148, 834 P.2d 1058, *review denied*, 120 Wn.2d 1016 (1992).

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.

SEINFELD, A.C.J., and PETRICH, J. Pro Tem., concur.

Review denied at 124 Wn.2d 1015 (1994).