189 P.3d 205 (2008)
WHITE CORAL CORPORATION, a British Virgin Islands Corporation, Appellant,
v.
GEYSER GIANT CLAM FARMS LLC, a Washington limited liability company, Ted L. Edwards, Jr., individually and the marital Community comprised thereof, Defendants,
Seattle Shellfish, LLC, a Washington Limited Liability Company, James L. Gibbons, individually and the marital community comprised thereof, Respondents.
No. 36165-5-II.
Court of Appeals of Washington, Division 2.
July 15, 2008.
George E. Kargianis, Law Offices of George Kargianis, Randall C. Johnson Jr., Don Paul Badgley, Badgley Mullins Law Group PLLC, Catherine C. Clark, The Law Office of Catherine C. Clark PLLC, Seattle, WA, for Appellant.
*206 Matthew Bryan Edwards, Owens Davies PS, Olympia, WA, for Respondents.
HOUGHTON, P.J.
¶ 1 White Coral Corporation appeals the trial court's dismissal of its claims against Geyser Giant Clam Farms, LLC; and Seattle Shellfish, LLC, James L. Gibbons, and Ted L. Edwards, Jr. (Seattle Shellfish).[1] It argues that the trial court should not have dismissed its case for failing to post a $125,000 security bond under RCW 4.84.210. We affirm.

FACTS
¶ 2 White Coral is a British Virgin Islands corporation formed by Hong Kong resident Elmer Yuen. Seattle Shellfish is a Washington limited liability corporation in the business of shellfish growth, harvest, and distribution.
¶ 3 In July 1998, White Coral and Seattle Shellfish formed Geyser to conduct the business of shellfish cultivation, marketing, and sale. In September, White Coral and Seattle Shellfish entered into an agreement to form a limited liability company (Agreement). As set forth in the Agreement, Yuen was one of two Geyser managers representing White Coral; Gibbons and Edwards were Geyser's manager representatives on behalf of Seattle Shellfish.
¶ 4 Under the Agreement, White Coral would make an initial capital contribution of $3,000,000 in exchange for a 65 percent interest in Geyser. The Agreement specified that if White Coral defaulted on its obligation, (1) White Coral's ownership interest automatically adjusted to a 28.18 percent interest, with Seattle Shellfish holding the remaining 71.82 percent interest; (2) White Coral's right to have its managers participate in Geyser's management terminated; and (3) White Coral became liable to other Agreement signatories for damages resulting from the default, which Geyser was permitted, but not required, to set off against White Coral's capital contributions.
¶ 5 White Coral paid approximately $1,300,000 of its initial capital contribution, but it made no further payment. In July 1999, Seattle Shellfish notified White Coral that it was in default of its obligation and that it had 30 days to cure the default. White Coral failed to do so.
¶ 6 According to Gibbons, White Coral's default created a financial hardship for Geyser because it had already planted a substantial geoduck crop that would not mature for several years, and Seattle Shellfish was forced to find other funding to maintain the crop for harvest. Edwards and Gibbons decided to dissolve Geyser and notified White Coral of that decision in August 1999.
¶ 7 According to Gibbons, in summer 2002, Yuen advised Geyser that he had an acute need for cash and asked it to begin repaying White Coral's capital contribution immediately. Under threat of lawsuit, Seattle Shellfish harvested the geoduck crop early to pay back the contribution, although Gibbons advised Yuen that harvesting the crop early would result in a reduced profit. Geyser paid White Coral the exact sum of its capital contribution, and it paid Seattle Shellfish a portion of its $1.6 million contribution.
¶ 8 In July 2003, Yuen sought access to Geyser's records as provided by the Agreement. The parties dispute whether Geyser accommodated the request. In February 2006, Geyser was dissolved. According to Seattle Shellfish, at the time of dissolution, Geyser still owed Seattle Shellfish $589,405.
¶ 9 In 2006, White Coral brought claims against Seattle Shellfish for breach of fiduciary duties, injunctive relief, and attorney fees, arguing in part that Seattle Shellfish had refused its request for an audit of Geyser's financial records and had destroyed records.[2] Seattle Shellfish counterclaimed for declaratory relief, breach of contract, and attorney fees.
¶ 10 Seattle Shellfish moved to increase White Coral's security for fees and costs to $200,000. Seattle Shellfish argued that RCW *207 4.84.210 authorized the trial court to order a foreign corporation prosecuting an action in Washington to provide security for any award of costs that might ultimately be entered against it. It asserted that its attorney fees were likely to equal or exceed $200,000. It asked the trial court to stay the matter until White Coral posted security and to dismiss the action if it failed to do so within 90 days. The trial court granted Seattle Shellfish's motion and ordered White Coral to post a $125,000 bond.
¶ 11 When White Coral failed to post the bond within 90 days, Seattle Shellfish moved to dismiss White Coral's claims. The trial court dismissed White Coral's claims without prejudice for failure to post the bond. The trial court later granted Seattle Shellfish's motion for voluntary dismissal of its counterclaims without prejudice. White Coral appeals.[3]

ANALYSIS
¶ 12 White Coral first contends that the trial court erred as a matter of law by ordering it to post a bond for attorney fees under RCW 4.84.210. It argues that the statute does not authorize security for that purpose, the American Rule on attorney fees governs, and no applicable exceptions apply here.[4]
¶ 13 We review whether a trial court properly ordered security for attorney fees under RCW 4.84.210 de novo as a question of statutory interpretation. City of Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). RCW 4.84.210 provides that where a plaintiff is a foreign corporation, "security for the costs and charges which may be awarded against such plaintiff may be required by the defendant." The statute mandates that where security is required, all proceedings are stayed until execution of a bond "conditioned that [the plaintiff] or surety company will pay such costs and charges as may be awarded against the plaintiff by judgment, or in the progress of the action or proceeding, not exceeding the sum of two hundred dollars."[5] RCW 4.84.210. The statute also provides that a "new or additional bond may be ordered by the court or judge, upon proof that the original bond is insufficient security, and proceedings in the action or proceeding stayed until such new or additional bond be executed and filed." RCW 4.84.210.
¶ 14 The $200 maximum provided for by RCW 4.84.210 is itself security for attorney fees. See 27 Marjorie D. Rombauer, Washington Practice: Creditors' Remedies  Debtors' Relief § 5.131, at 142-43 n. 3 (Supp. 2007-08) (noting that the statutory attorney fee allowed by RCW 4.84.010(6) was increased to $200 in 2004 by RCW 4.84.080). Beyond that amount, the trial court may also, in its discretion and on proof, order additional security for attorney fees where an independent basis in contract, statute, or equity allows it to do so. See Moe v. Wise, 97 Wash.App. 950, 970-71, 989 P.2d 1148 (1999) (noting that RCW 4.84.010 mandates the award of certain sums by way of indemnity, including statutory attorney fees, and that *208 the right to costs is substantive); State ex rel. A.N.C. v. Grenley, 91 Wash.App. 919, 930, 959 P.2d 1130 (1998) ("[U]nder RCW 4.84, Washington's costs statute, attorney fees are considered `costs' and may be awarded if so provided by statute, agreement, or other recognized ground of equity."); 27 Wash. Prac. § 5.131, at 142 n. 9 and n. 12.
¶ 15 Here, Seattle Shellfish raised an affirmative defense that White Coral's action was frivolous under RCW 4.84.185. In reply to its motion to increase security, Seattle Shellfish also argued in part that White Coral's complaint was frivolous.
¶ 16 Under RCW 4.84.185, a trial court may award the prevailing party reasonable attorney fees incurred in opposing a frivolous action advanced without reasonable cause. This statute forms an independent statutory basis by which the trial court could ultimately award attorney fees to Seattle Shellfish. The trial court could properly require additional security for attorney fees under RCW 4.84.210, and it did not err in doing so here.[6],[7]
¶ 17 We next address White Coral's argument that the trial court abused its discretion by ordering a $125,000 security bond. It asserts that Seattle Shellfish failed to offer evidence in support of its request to increase the security amount to more than $200.
¶ 18 We review a trial court's decision on attorney fees for an abuse of discretion. Austin v. U.S. Bank of Wash., 73 Wash.App. 293, 309, 869 P.2d 404 (1994). A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 168, 876 P.2d 435 (1994).
¶ 19 In seeking a $200,000 bond, Seattle Shellfish asserted that (1) its claim for attorney fees would likely equal or exceed that amount should it prevail at trial; (2) equity justified the amount; and (3) the case would be very expensive if tried because White Coral failed to keep copies of all accounting information, putting Seattle Shellfish in a position of reproducing lengthy discovery.[8] Seattle Shellfish's counsel also submitted a declaration in support of the motion to increase security attesting to his belief that Seattle Shellfish's attorney fees would approach or exceed $200,000. The trial court did not abuse its discretion in ordering a $125,000 bond based on this information.
¶ 20 Affirmed.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] Geyser was dissolved on February 16, 2006. Edwards is a Pennsylvania resident and was never served in the lawsuit.
[2] White Coral filed its initial complaint in February 2006 and an amended complaint in April.
[3] In response to Seattle Shellfish's contention that White Coral could not appeal dismissal of its claims without prejudice, our Commissioner correctly ruled that the trial court's order was appealable under RAP 2.2(a)(3) because it had the practical effect of discontinuing the action. See also Munden v. Hazelrigg, 105 Wash.2d 39, 44, 711 P.2d 295 (1985) (under RAP 2.2(a)(3), a dismissal without prejudice is appealable where it has the effect of determining the action and preventing a final judgment or discontinuing the action).
[4] Under the American Rule, attorney fees may be recovered by the prevailing party as costs of litigation where permitted by contract, statute, or a recognized ground in equity. McGreevy v. Oregon Mut. Ins. Co., 128 Wash.2d 26, 35 n. 8, 904 P.2d 731 (1995).
[5] RCW 4.84.010 defines attorney compensation and costs and provides that "[t]he measure and mode of compensation of attorneys and counselors, shall be left to the agreement, expressed or implied, of the parties, but there shall be allowed to the prevailing party upon the judgment certain sums by way of indemnity for the prevailing party's expenses in the action, which allowances are termed costs." RCW 4.84.010(6) defines allowable costs to include statutory attorney fees. As the statute itself defines costs to include attorney fees, we do not further address the parties' arguments regarding the definition of "costs and charges." RCW 4.84.210. We also note that Washington courts consider attorney fees as costs of litigation. Detonics ".45" Assocs. v. Bank of Cal., 97 Wash.2d 351, 354, 644 P.2d 1170 (1982).
[6] Although White Coral argues that Seattle Shellfish's frivolous lawsuit claim is premature, we need not address whether Seattle Shellfish would ultimately prevail on the claim. We review whether an independent statutory basis existed for the trial court to award attorney fees such that it could, as a matter of law, impose additional security for those fees. Because Seattle Shellfish raised the affirmative defense of a frivolous lawsuit under RCW 4.84.185 before the trial court, an independent basis existed. We also note that although an order of security for future costs may be speculative, we need not reach White Coral's argument because the record discloses a reasonable likelihood that the trial court could award Seattle Shellfish attorney fees based on White Coral's filing of a frivolous lawsuit. White Coral argued that the evidence for its claims was in Geyser's accounting records. But Seattle Shellfish submitted substantial proof that it offered White Coral access to those records on numerous occasions, and White Coral declined the opportunity to audit them. In response to White Coral's contention that Seattle Shellfish admits to a justiciable controversy, thereby defeating any contention that the lawsuit was frivolous, we note that Seattle Shellfish's statement was made only in reference to its own claim for declaratory relief from White Coral's complaint.
[7] Because an independent statutory basis supported the trial court's potential award of Seattle Shellfish attorney fees, we do not address Seattle Shellfish's remaining theories of entitlement to attorney fees under contract or in equity. We agree with White Coral that RCW 4.12.090, providing for an award of attorney fees for change of venue, is not sufficient authority to award security for attorney fees here.
[8] In support of this argument, Seattle Shellfish submitted a letter from White Coral stating that P.K. Cheung, Yuen's agent to whom Geyser submitted its quarterly accountings for many years, was no longer employed by White Coral and a letter showing that White Coral had thus far failed to produce all accounting information that Geyser claimed it had provided to White Coral.