[No. 59244-6. En Banc. February 25, 1993.]

NORDSTROM CREDIT, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

936

*Lane Powell Spears Lubersky,* by *George C. Mastrodonato* and *Gail E. Mautner,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Phyllis K. MacLeod, Assistant,* for respondent.

DOLLIVER, J. — Appellant Nordstrom Credit, Inc. (Credit) challenges the trial court's ruling that it may not apportion the income at issue among various states for purposes of calculating the Washington business and occupation (B&O) tax. In 1988, the Department of Revenue (DOR) assessed a deficiency of $881,441 against Credit for the years 1984 through 1987. Credit paid the deficiency and brought a refund action under RCW 82.32.180.

Credit was formed to finance the accounts receivable of its parent corporation, Nordstrom, Inc. (Nordstrom). In October 1984, Nordstrom and Credit executed two agreements under which Credit would purchase from Nordstrom an interest in outstanding customer obligations. Joint exhibit 8 (operating agreement); joint exhibit 9 (investment agreement). A "customer obligation" includes unpaid customer charges and any finance or late payment fees. Under the operating agreement, Nordstrom would collect amounts due on customer obligations, and allot Credit its "share" at the end of each accounting period. See joint exhibit 8 §§ 1(h), 4(a), 9.

Nordstrom took a subordinated interest in Credit to encourage lenders to provide the funds with which Credit would purchase outstanding customer obligations. To further encourage lender investment, Credit agreed to maintain a 1.25 ratio between earnings and fixed charges. This arrangement provided lender financing for Nordstrom's accounts receivable, thus enabling Nordstrom to expand and build new stores.

Under the operating agreement, Credit either (1) paid a discount purchase price for conveyed customer obligations, or (2) paid the full purchase price and later received a "deferred discount". Joint exhibit 8 § 3. The parties disagree regarding the method used to calculate the deferred discount, against which the trial court ruled DOR assessed the disputed B&O tax. Credit argues the deferred discount equals its share of the finance fees assessed against conveyed customer obligations. DOR contends the deferred discount represents a fixed percentage of conveyed customer obligations, without regard to any finance fees.

RCW 82.04.290 requires that persons conducting within the state of Washington any "business activity", other than those enumerated in separate subsections, pay a B&O tax equal to 1.5 percent of gross income. RCW 82.04.460 further provides:

> (1) Any person rendering services taxable under RCW 82.04-.290 and *maintaining places of business* both within and without this state which contribute to the rendition of such services shall . . . apportion to this state that portion of his gross income which is derived from services rendered within this state. . . .
> (2) Notwithstanding the provision of subsection (1) of this section, persons *doing business* both within and without the state who receive *gross income from service charges*, as defined in RCW 63.14.010 . . . shall apportion or allocate gross income taxable under RCW 82.04.290 to this state . . ..

(Italics ours.) RCW 63.14.010(11) defines the term "service charge" as "the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time." The State may levy separate B&O taxes on both the "sale at retail" and the related service charge income. *Rena-Ware Distribs., Inc. v. State*, 77 Wn.2d 514, 517, 463 P.2d 622 (1970).

Credit and DOR disagree on which, if either, subsection of RCW 82.04.460 applies. Credit contends subsection (2) governs because the deferred discount consists of finance fees and thus constitutes "gross income from service charges". DOR counters subsection (1) applies because the deferred discount is not related to service charges. According to DOR,

Credit would receive the same amount of deferred discount (*i.e.*, 1 percent of conveyed customer obligations) even if customers paid account balances in full and avoided any finance fees. Because we hold that Credit fails to satisfy the threshold requirement of doing business outside the state, we decline to address whether the deferred discount constitutes service charge income.

Notwithstanding which subsection of RCW 82.04.460 controls, DOR argues Credit may not apportion its income because Credit does not maintain a place of business and does not do business outside the state of Washington. DOR contends Credit's business activity consists of acquiring financing and purchasing customer obligations from Nordstrom. According to DOR, this activity occurred solely within the state of Washington.

Credit, on the other hand, claims Nordstrom acted as Credit's agent in extending credit to customers and collecting payment. Credit also asserts Nordstrom and Credit constitute a "unitary business". As a result, Credit argues it conducted business wherever Nordstrom offered charge cards to and billed customers. During the period in question, Nordstrom maintained stores in Alaska, California, Montana, Oregon, Utah, and Washington.

The trial court agreed with DOR, and held Credit's deferred discount did not constitute "gross income from service charges". The trial court also found Credit did not conduct business or maintain an office outside the state of Washington, specifically ruling Nordstrom did not act as Credit's agent. As a consequence, the trial court held Credit could not apportion its income for purposes of calculating its B&O tax. Credit appealed to Division Two of the Court of Appeals, which certified the case for transfer to this court under RAP 4.2 and 4.3. We affirm.

■ ■ On appeal, the court reviews solely whether the trial court's findings of fact are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law. *E.g.*, *Willener v. Sweeting*, 107 Wn.2d 388, 393, 730 P.2d 45 (1986). The party challenging a

finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence. *Grein v. Cavano*, 61 Wn.2d 498, 507, 379 P.2d 209 (1963).

■ Credit and DOR disagree regarding the appropriate standard of review. DOR contends this appeal primarily concerns the trial court's findings of fact. Credit, on the other hand, argues its assignments of error involve conclusions of law, and the court may therefore conduct a de novo review of the issues. Although Credit correctly states the label used by the trial court is not determinative, *Willener*, 107 Wn.2d at 394, Credit provides no authority or analysis to support its claim that findings labeled factual by the trial court are actually legal conclusions. We find the trial court accurately characterized its rulings.

■■ The primary issue before us is whether Credit conducted business outside the state of Washington, thus authorizing apportionment of its income. *Dravo Corp. v. Tacoma*, 80 Wn.2d 590, 602, 496 P.2d 504 (1972) ("[A]pportionment is not applicable if the taxable incident or activity occurs entirely within the taxing jurisdiction."). Credit has no employees or offices of its own outside Washington. The question then is whether Nordstrom acted as Credit's agent in conducting extraterritorial activities during the audit period. On the agency issue, the trial court entered the following findings of fact:

> 26. Under the Operating Agreement, Nordstrom, Inc. is responsible for collecting all accounts receivable. Nordstrom Credit, Inc. is not entitled to direct Nordstrom, Inc.'s collection activities during the term of the Operating Agreement.
> 27. Nordstrom Credit, Inc.'s only rights to participate in collection of accounts receivable arise if the Operating Agreement is terminated.
> 28. Nordstrom Credit, Inc. also has no right to control other actions of Nordstrom, Inc.

Credit does not assert a lack of substantial evidence to support these findings. Instead, Credit argues agency is a conclusion of law subject to de novo review. We disagree. Although agency is a legal concept, it "depends upon the existence of required factual elements". Restatement (Second) of Agency

§ 1, comment *b* (1958). Washington courts generally treat agency as a question of fact. *E.g.*, *Murray v. Corson Corp.*, 55 Wn.2d 733, 736, 350 P.2d 468 (1960); *Durias v. Boswell*, 58 Wn. App. 100, 104, 791 P.2d 282 (1990). Having failed even to challenge the sufficiency of the evidence, Credit renders the trial court's findings of fact verities on appeal. *E.g.*, *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986).

■ Agency requires that both parties consent to the relationship and that the principal exercise control over the agent. Restatement (Second) of Agency § 1; *Durias*, 58 Wn. App. at 104. Because Credit did not control any of Nordstrom's business activities, we hold that Nordstrom did not act as Credit's agent during the audit period.

■ We further reject Credit's "unitary business" arguments, which have no relevance to the facts of this case. Washington courts have used the unitary business concept to define *who* must pay B&O taxes. *See Pacific First Fed. Sav. & Loan Ass'n v. State*, 92 Wn.2d 402, 598 P.2d 387 (1979). RCW 82.04.290 imposes a tax upon "persons", defined as individuals, companies, corporations, etc. RCW 82.04.030. The unitary business doctrine prevents the dissection of a corporation into its component parts for purposes of assessing a B&O tax. *Cf. Pacific First*, 92 Wn.2d at 406-09. The doctrine does not support the agglomeration of different corporations into one entity to avoid B&O taxes on transactions between the separate corporations. This court has held quite the opposite:

> The corporation will be regarded as a legal entity, as a general rule, and the courts will ignore the fiction of corporate entity only with caution, and when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud.

*Washington Sav-Mor Oil Co. v. State Tax Comm'n*, 58 Wn.2d 518, 523, 364 P.2d 440 (1961). We refuse to ignore the corporate form or to treat Credit and Nordstrom as one "person" for purposes of apportioning income under RCW 82.04-.460.

Credit's reliance on *Western Acceptance Co. v. State*, 472 So. 2d 497 (Fla. Dist. Ct. App. 1985), *review denied*, 486 So. 2d 598 (1986) is likewise misplaced. First, Florida taxes income, while Washington taxes transactions. The two states have taxation schemes sufficiently dissimilar to render Florida's case law inapplicable. Second, the facts of *Western Acceptance* differ substantially from the facts of the case before us. In *Western Acceptance*, the Florida District Court of Appeal held, based on a parent corporation's activities within the state, its out-of-state subsidiary had the minimal connection constitutionally required for taxing the income of a foreign corporation. *Western Acceptance*, 472 So. 2d at 503-04. In the case at bar, Credit is a Washington corporation, admittedly doing business within the state. The court need not engage in "minimum contacts" analysis to justify imposing a tax on Credit; by incorporating and doing business in the state, Credit enjoys the benefits and protections Washington provides. Finally, in *Western Acceptance*, the court concluded substantial evidence supported the finding by a hearing officer that the parent corporation acted as an agent for the subsidiary. *Western Acceptance*, 472 So. 2d at 504. Here, on the other hand, the trial court found Nordstrom did not act as Credit's agent outside the state. Thus, *Western Acceptance* provides no support for Credit's position.

We hold Credit does not conduct business outside the state. Credit's business activities primarily consist of procuring financing, purchasing customer obligations, and receiving deferred discounts and a share of customer collections. These activities occur solely in Washington.

Nordstrom independently conducts collection activities; Nordstrom does not act as Credit's agent in these endeavors, nor do Nordstrom and Credit constitute a unitary business. Rather, Credit and Nordstrom engage in "arm's length" sales transactions within the state of Washington, the income from which is fully subject to B&O taxation.

■ Our determination that Credit does not do business outside the state disposes of Credit's commerce clause objec-

tions to the denial of apportionment. See Brief of Appellant, at 46-47. The commerce clause simply does not apply to intrastate transactions. Const. art. 1, § 8; *cf. Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 81 L. Ed. 2d 540, 104 S. Ct. 2620 (1984). In addition, because we hold Credit does not do business outside the state, we need not address whether, as Credit claims, "maintaining a place of business" and "doing business" are equivalent standards. *Compare* RCW 82.04-.460(1) *with* RCW 82.04.460(2). Affirmed.

ANDERSEN, C.J., and UTTER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.