FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAR 13 AM 8: 04

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 74955-2-I |
| | ) | |
| M.L., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: March 13, 2017 |

BECKER, J. — M.L. appeals the order committing him to involuntary treatment. The evidence was sufficient to support the trial court's finding that M.L. posed a likelihood of serious harm to others. We affirm.

Officers from the King County Sheriff's Office served an eviction notice on appellant M.L. at his house on February 17, 2016. Based on M.L.'s behavior, a deputy called a designated mental health professional to the house.

The next day, February 18, a designated mental health professional petitioned for M.L.'s initial detention. The trial court granted the petition. M.L. was admitted to Highline Medical Center for evaluation and treatment. The next day, Highline Medical Center petitioned for 14 days of additional involuntary treatment. The petition triggered the statutory requirement for a probable cause hearing. RCW 71.05.240(1).

The probable cause hearing was held on February 22, 2016. To commit a person for 14-day involuntary treatment, the petitioner must show by a preponderance of the evidence that the person, "as the result of mental disorder, presents a likelihood of serious harm, or is gravely disabled." RCW 71.05.240(3)(a).

The petitioners proceeded only on their allegation that M.L. presented a "likelihood of serious harm to others." That term means "a substantial risk that . . . physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(27)(a)(ii). At the hearing, Deputy Joseph Winters and Dr. Richard Thomas testified in support of the petition. M.L. did not testify or present any evidence.

The court found by a preponderance of the evidence that M.L., as a result of a mental disorder, presented a likelihood of serious harm to others. The court entered an order committing M.L. for involuntary treatment for a period of 14 days. M.L. appeals. He challenges the sufficiency of the evidence to prove that he presented a likelihood of serious harm to others.

Where the trial court has weighed the evidence, our review is generally limited to determining whether substantial evidence supports the findings, and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Substantial evidence is the quantum of evidence sufficient to persuade a fair-minded person of the truth of the declared premise. Holland v. Boeing Co., 90 Wn.2d 384, 390, 583 P.2d 621 (1978). The party challenging a finding of fact

2

bears the burden of demonstrating the finding is not supported by substantial evidence. Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993).

To support the finding that M.L. presented a likelihood of serious harm to others, petitioners rely on the opinion of Dr. Thomas, who testified to that effect at the hearing. Dr. Thomas, a licensed clinical psychologist, evaluated M.L. at Highline Medical Center several days before the hearing. M.L. did not participate in the evaluation. Dr. Thomas reviewed the medical charts and spoke with M.L.'s treatment team.

The court permitted Dr. Thomas to read from and refer to several sources of information about M.L., including the initial detention paperwork, a declaration from a deputy sheriff concerning reports that M.L. had threatened to harm family members and "to kill cops," and a sheriff's office bulletin listing instances of M.L.'s history of assaults and threats. M.L. objected to this testimony as hearsay. The court agreed it was hearsay and would not be considered as substantive evidence. It was admitted as relevant for the basis of Dr. Thomas's opinion.

Without objection, Dr. Thomas then read portions of the medical record at Highline, where M.L. had been since the initial detention. This portion of his testimony documented M.L.'s delusional statements and inappropriate language and thus helped to prove M.L.'s mental disorder. The finding of a mental disorder is not challenged. The controversy in this appeal is whether Dr. Thomas provided substantive evidence that M.L.'s behavior presented a likelihood of

harm to others. Again, given the petitioners' theory, the statutory definition required proof of a "substantial risk" that M.L. would inflict physical harm upon another, "as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(27)(a)(ii).

The only substantive evidence that M.L. had engaged in such behavior was Dr. Thomas' testimony about an incident involving a milk carton. The incident occurred on February 19. An emergency medical technician was handing M.L. the milk he had requested. According to the chart notes, as relayed by Dr. Thomas, "the patient punched the milk, exploding it all over both of them. The patient continued to fight with [the technician]. They both fell to the ground. The patient was actively trying to assault [the technician]." Two staff members took M.L. to the ground, and he was put into four-point restraints. Dr. Thomas testified that this incident factored into his opinion that M.L. presented a substantial risk of harm to others because it showed he was impulsive and "assaultive in the hospital."

> Q. You say in the hospital. What's the importance of the setting?
> A. Well, it's very important as if someone is assaultive in the hospital setting, it shows that this behavior is continuing and is acted upon. It's not just threats. This man is dangerous.

M.L. contends the evidence that he fought with a hospital staff person insufficiently supports the finding that he presented a likelihood of serious harm to others because the incident occurred shortly after he was admitted to the hospital and his condition had improved by the time of the hearing. As evidence

that his condition improved, M.L. cites this response by Dr. Thomas to a question on cross-examination:

> Q. Okay. And sitting here and observing my client today, you didn't see any indications that looked like any type of physical assault, correct?
> A. That is correct.
> . . . .
> A. I didn't see any assaultive behavior.

This response was not an acknowledgement by Dr. Thomas that M.L.'s condition had improved. In fact, Dr. Thomas had just been asked on direct examination to explain why he had "the opinion that the respondent still presents a danger to others even though that happened three or four days ago?" He answered that attacking a healthcare provider who was trying to help "is showing exceedingly poor judgment, exceedingly poor impulse control. This is only three days ago, and there's no insight."

The assault on the hospital technician, as described in the testimony of Dr. Thomas, was sufficient to demonstrate, by a preponderance of the evidence, a substantial risk that M.L. would inflict physical harm upon another, "as evidenced by behavior which has caused such harm." RCW 71.05.020(27)(a)(ii). M.L. has not met his burden to demonstrate the challenged finding is not supported by substantial evidence.

5

No. 74955-2-I/6

The 14-day commitment order is affirmed.

_Becker, J._

WE CONCUR:

_Spearman, J._          _Schindler, J._

6