IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of | No. 85522-1-I |
| TAYME ROSE-LEAVITT, | |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| RAND WORKMAN, | |
| Appellant. | |

BOWMAN, J. — Rand Workman appeals a trial court order imposing prefiling restrictions for engaging in abusive litigation. Because substantial evidence supports the trial court's conclusion that Workman engaged in abusive litigation, and the court did not exceed its statutory authority by ordering prefiling restrictions, we affirm.

FACTS

Tayme Rose-Leavitt and Workman married in October 2013. They have one minor son together. Rose-Leavitt petitioned for divorce in December 2018 in Island County Superior Court. Soon after, the Island County District Court convicted Workman of domestic violence (DV) related offenses against Rose-Leavitt. As a result, the court issued a postconviction DV no-contact order against Workman.

On January 3, 2020, the superior court entered a permanent parenting plan. In the plan, the court made several findings under RCW 26.09.191 in

support of limiting Workman's contact with their seven-year-old son. It found that Workman has a history of DV, long-term problems with substance abuse, and engaged in abusive use of conflict "in a way that endangers or damages the psychological development" of their child.

The court issued a residential schedule, giving Workman two weekend visits per month. And it ordered that both Workman and Rose-Leavitt obtain substance use disorder (SUD) evaluations and complete any recommended treatment. Finally, the court issued a restraining order protecting Rose-Leavitt from Workman. It found that Workman represents a credible threat to Rose-Leavitt's safety and restrained him from coming within 100 feet of her home or workplace except when they exchange their child for visits.

On August 5, 2020, Rose-Leavitt moved to hold Workman in contempt for failing to get an SUD evaluation and exposing their son to DV during a visit. She also petitioned the court to amend the residential schedule for the same reasons. On August 24, the court found adequate cause to move forward and set a hearing for September. The court also issued a temporary parenting plan, again ordering Workman undergo an SUD evaluation but also ordering an anger management evaluation. The temporary plan also required supervised visitation. On September 8, 2022, Workman and Rose-Leavitt agreed to vacate the temporary order requiring supervised visitation.

On July 28, 2021, Workman, proceeding pro se, moved for a change of venue. He argued that Rose-Leavitt's restraining order prevented him from being able to "safely" file pleadings at the Island County Courthouse because Rose-

2

Leavitt worked in the building. The court denied the motion but ordered the parties to present a modified restraining order giving Workman access to the courthouse for "[c]ourt business."

On July 27, 2022, Rose-Leavitt again petitioned to amend the parenting plan because Workman was engaging in abusive use of conflict toward her and DV toward their child. And she moved for an immediate restraining order suspending Workman's visitation pending a hearing on the issue. The same day, the court entered an ex parte restraining order suspending Workman's visitation with their son and set a hearing for August 15, 2022.

On August 4, 2022, Workman moved to vacate the ex parte restraining order. And on August 15, the date of the hearing to amend the parenting plan, Workman filed a response to Rose-Leavitt's petition. But rather than answering it, Workman proposed his own amended parenting plan. He asked the court to find that he did not engage in a pattern of DV and is no longer needing an SUD evaluation. He also urged the court to find that Rose-Leavitt, not Workman, engaged in abusive use of conflict. And he proposed a new residential schedule under which their child would live with Workman around 50 percent of the time.

At the August 15 hearing, the court issued an order finding adequate cause to hold a full hearing on Rose-Leavitt's petition to modify the parenting plan. It also issued a temporary parenting plan giving Workman four hours of supervised visitation per week. And it appointed a guardian ad litem (GAL) to determine the best interests of their child, now 10 years old, and to issue a report with recommendations.

3

On August 26, 2022, Workman filed a 52-page motion to reconsider the August 15 orders. The court rejected the motion as overlength with leave to refile. Workman then filed an amended motion to reconsider. In the motion, Workman asked the court to reconsider suspending his visitation because it did so without "good reason" or sufficient notice. And he objected to the appointment of the GAL. He then spent several pages accusing Rose-Leavitt of trying to make his life difficult, abusing the court process, failing urinalyses, and leaving a loaded gun on her nightstand. And he attacked Rose-Leavitt's proposed parenting plan. On September 16, the court denied Workman's motion to reconsider but modified the temporary restraining order to give him unsupervised visits every other weekend.

On September 29, 2022, Workman moved ex parte to hold Rose-Leavitt in contempt. He argued that she "misled" the court with her July 2022 proposed amended parenting plan. He asked the court to approve his modified parenting plan, impose "certain conditions" on Rose-Leavitt to "purge the contempt," order her to pay fines and his attorney fees (even though he was appearing pro se) and costs, and order make-up residential time. And if Rose-Leavitt continued to interfere with his residential time, he asked the court to "[s]end [her] to jail."

On October 3, 2022, the court held a hearing on Workman's contempt motion. That same day, Workman filed a proposed temporary parenting plan, again urging the court to find that Rose-Leavitt engaged in abusive use of conflict and asking for around 50 percent residential time. The court denied the contempt motion and rejected Workman's proposed temporary parenting plan.

4

On October 7, 2022, Rose-Leavitt again moved for an ex parte order suspending visitation. She attached a copy of an e-mail to her motion that Workman had sent to her attorney and the GAL, stating that he would not cooperate with the GAL's investigation. On October 31, the court again suspended Workman's residential time until further order of the court and ordered Workman to undergo a psychological evaluation based on his abusive and aggressive interactions with the GAL.

On January 26, 2023, Rose-Leavitt again petitioned to modify the parenting plan. And on February 10, 2023, Workman served Rose-Leavitt with 20 pages of interrogatories. Several interrogatories asked for evidence of his need to undergo SUD, DV, and mental health evaluations. Workman asked Rose-Leavitt whether she would agree to pay for his evaluations and whether she thought she needed evaluations herself. And he asked several questions about Rose-Leavitt's job with the county and her relationship and interactions with others in her workplace.

After receiving Workman's interrogatories, Rose-Leavitt moved the court to restrict his filing privileges, alleging he engaged in abusive litigation by making unsupported factual claims, continuing to litigate issues the court already decided, and making legal contentions not warranted by law. She also asked the court to strike Workman's interrogatories and award her attorney fees and costs. On March 13, 2023, the court heard Rose-Leavitt's motion. It struck several of Workman's interrogatories as irrelevant and set a special hearing to consider the motion to restrict Workman's filing privileges.

On June 5, 2023, following a hearing, the court issued an order restricting Workman's prefiling privileges. It found the parties "have been to court about the same or substantially similar issues in the past five years," and rather than complying with the court's orders to obtain SUD, DV, and mental health evaluations, Workman has instead "propounded interrogatories asking in detail about [Rose-Leavitt]'s reasons for requesting the exams and essentially making arguments that he should not need to take the evaluations." The court then prohibited Workman from "filing, initiating, advancing, or continuing the litigation" against Rose-Leavitt without prefiling approval of the court until May 22, 2025. And the court noted that the prefiling restrictions "may be lifted during any time period that Mr. Workman has counsel in this family law case upon motion to the court."[1]

Workman appeals.

ANALYSIS

Workman argues that the trial court erred by concluding that his propounded interrogatories were abusive litigation. He also contends that the trial court exceeded its authority by requiring that he obtain counsel and by tying his right to proceed in the litigation to hiring a lawyer. We address each argument in turn.

Under the abusive litigation act (ALA), chapter 26.51 RCW, a party may seek an order restricting abusive litigation "if the parties are current or former intimate partners and one party has been found by the court to have committed

---

[1] The court also awarded Rose-Leavitt $3,420 in attorney fees.

[DV] against the other party."  RCW 26.51.030(1).  When a party moves for an order restricting abusive litigation, the court must "attempt to verify that the parties have or previously had an intimate partner relationship and that the party raising the claim of abusive litigation has been found to be a victim of [DV] by the other party."  RCW 26.51.040(1).  If the court "verifies that both elements are true, or is unable to verify that they are not true," it must "set a hearing to determine whether the litigation meets the definition of abusive litigation."  *Id.*

Under RCW 26.51.020(1)(a), litigation is "abusive" if

(i)  [t]he opposing parties have a current or former intimate partner relationship;
     (ii)  The party who is filing, initiating, advancing, or continuing the litigation has been found by a court to have committed [DV] against the other party pursuant to:  (A) An order entered under chapter 7.105 RCW or former chapter 26.50 RCW; (B) a parenting plan with restrictions based on RCW 26.09.191(2)(a)(iii); or (C) a restraining order entered under chapter 26.09, 26.26A, or 26.26B RCW, provided that the issuing court made a specific finding that the restraining order was necessary due to [DV]; and
     (iii)  The litigation is being initiated, advanced, or continued primarily for the purpose of harassing, intimidating, or maintaining contact with the other party.

1. Interrogatories

Workman argues the trial court erred by concluding that his interrogatories amount to abusive litigation.  We disagree.

We review a trial court's findings of fact to determine whether substantial evidence supports them and, in turn, whether those findings support the trial court's conclusions of law.  *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939, 845 P.2d 1331 (1993).  We review the conclusions of law de novo.  *State v. Fuentes*, 183 Wn.2d 149, 157, 352 P.2d 152 (2015).

7

Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). The party challenging a finding of fact bears the burden of showing that substantial evidence does not support the finding. *Nordstrom*, 120 Wn.2d at 939-40. Unchallenged facts are verities on appeal. *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).

Under RCW 26.51.020(3)(e) and (f), "litigation" means "any kind of legal action or proceeding," including "request[s] for interrogatories." And litigation that addresses the "same or substantially similar issues between the same or substantially similar parties," that the parties have litigated in the past five years in the same court, creates a rebuttable presumption that the litigation is primarily to harass, intimidate, or maintain contact with the other party. RCW 26.51.050(1).

Here, the trial court concluded that Workman's litigation was abusive because he repeatedly challenged issues that it had decided. In support of its conclusion, the court found that Workman

> has been ordered to take evaluations and to cooperate with the GAL. [He] has not taken the evaluations and instead has propounded interrogatories asking in detail about [Rose-Leavitt]'s reasons for requesting the exams and essentially making arguments that he should not need to take the evaluations. The interrogatories also ask additional questions of a harassing nature about [Rose-Leavitt]'s job at the county even though the motion for change of venue has been denied.

Substantial evidence supports the trial court's findings. The record shows that Workman has a history of DV toward Rose-Leavitt and that the court ordered him to obtain an SUD evaluation in the January 2020 permanent parenting plan.

8

In the August 2020 temporary parenting plan, the court again ordered Workman to obtain an SUD evaluation and added an anger management evaluation. The court then denied Workman's motion to change venue based on Rose-Leavitt's place of employment in July 2021. And it appointed a GAL in August 2022. Finally, the court ordered that Workman obtain a mental health evaluation in October 2022.

Still, Workman continued to dispute the DV findings and repeatedly alleged in filings that Rose-Leavitt is the abusive litigant. Then, Workman propounded interrogatories that focused on gathering evidence about whether he needed SUD, DV, or mental health assessments and sought information about the circumstances of Rose-Leavitt's employment. The record shows that Workman engaged in litigation addressing the same or substantially similar issues previously decided by the court.

Workman argues the trial court's conclusion is unsupported by substantial evidence because it relies on his failure to obtain the evaluations. According to Workman, whether he has violated court orders "can and should be dealt with through other procedural means." But the trial court did not rely on Workman's failure to comply with court orders as its basis for concluding he engaged in abusive litigation. Instead, it relied on his use of litigation to repeatedly challenge issues previously decided and to harass Rose-Leavitt.[2]

---

[2] Workman also argues that the trial court erred by striking several of his interrogatory questions before holding a hearing to determine whether they amounted to abusive litigation. He alleges that "the Court's decision to do both, in this sequence was an abuse of discretion." But Workman offers no authority to support his allegation. *See* RAP 10.3(a)(6). As a result, we do not consider his argument. *McKee v. Am. Home Prods., Corp.,* 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

Substantial evidence supports the trial court's conclusion that Workman's interrogatories amount to abusive litigation.

2. Authority to Impose Prefiling Restrictions

Workman argues that the trial court abused its discretion by exceeding its authority to impose prefiling restrictions under the ALA because it required that he obtain counsel and tied his right to proceed in the litigation to hiring a lawyer. We disagree.

We review a trial court's order limiting a party's access to the court for an abuse of discretion. *Bay v. Jensen*, 147 Wn. App. 641, 657, 196 P.3d 753 (2008). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A trial court necessarily abuses its discretion when it exceeds its statutory authority. *State v. Kerow*, 192 Wn. App. 843, 846, 368 P.3d 260 (2016).

The ALA gives the trial court the authority to impose prefiling restrictions on a litigant who engages in abusive litigation. Under RCW 26.51.070(3)(a),

> [a] person who is subject to an order restricting litigation against whom prefiling restrictions have been imposed pursuant to this chapter who wishes to initiate a new case or file a motion in an existing case during the time the person is under filing restrictions must first appear before the judicial officer who imposed the prefiling restrictions to make application for permission to institute the civil action.

Here, after finding that Workman engaged in abusive litigation, the trial court ordered that he "is prohibited from filing, initiating, advancing, or continuing

the litigation against [Rose-Leavitt] until 5/22/25 without pre-filing approval from the court." The trial court's order is squarely within the purview of the ALA.

Still, Workman argues the trial court exceeded its statutory authority when it ordered that the prefiling restriction "may be lifted . . . upon motion to the court [ ] during any time period that [he] has counsel." According to Workman, the order amounts to a "stipulation" that he "must retain counsel in order for the court to consider removing restrictions." And he contends it unlawfully ties his right to proceed freely to retaining counsel.[3] But nothing in the court's order prevents Workman from moving to lift the prefiling restrictions, whether or not he retains counsel. The language also does not tie Workman's ability to litigate to a requirement to retain counsel. As explained in the order, Workman can litigate the case as he sees fit so long as he obtains the court's prefiling approval to ensure he is no longer engaging in abusive litigation.

Workman fails to show that the trial court's prefiling restrictions exceeded its statutory authority.[4]

3. Attorney Fees

Rose-Leavitt seeks attorney fees and costs on appeal. We may award attorney fees on appeal if a contract, statute, or recognized ground in equity permits the recovery of attorney fees at trial and the party substantially prevails.

---

[3] Rose-Leavitt also challenges the order as "summarily dispos[ing] of prefiling restrictions simply by hiring an attorney." But Rose-Leavitt did not object to the court's order below, and she did not file a cross appeal. As a result, we do not address her challenge. *See* RAP 2.5(a); RAP 2.4(a).

[4] Because we conclude that the trial court did not tie Workman's ability to litigate to retaining counsel, we do not address his argument that insufficient findings support the court's order to do so.

*Judges of Benton & Franklin Counties Superior Ct. v. Killian*, 195 Wn.2d 350, 363, 459 P.3d 1082 (2020).

Under the ALA, if a court finds that a party is engaging in abusive litigation, it must award the responding party reasonable attorney fees and costs incurred by "responding to the abusive litigation including the cost of seeking the order restricting the abusive litigation." RCW 26.51.060(2)(b). Because we affirm the trial court's conclusion that Workman engaged in abusive litigation, we award Rose-Leavitt attorney fees and costs on appeal.

Substantial evidence supports the trial court's conclusion that Workman engaged in abusive litigation, and the court did not exceed its statutory authority in ordering prefiling restrictions. We affirm the trial court's order imposing prefiling restrictions and award Rose-Leavitt her appellate attorney fees and costs.

_____, J.

WE CONCUR:

_____          _____, J.