**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| BETH ANNE CABRAL, | No. 60613-5-II |
| Respondent, | |
| v. | |
| DUSTIN GLINSKI, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Nicholas and Beth Cabral are guardians for their minor granddaughter, CG. Dustin Glinski is the child's father. The relationship between Glinski and the Cabrals has been tense, at best, since the Cabrals petitioned for the guardianship of CG. After Glinski repeatedly sent death threats and harassing messages to the Cabrals, the Cabrals obtained anti-harassment protection orders against Glinski. Glinski has also engaged in nonstop litigation with the Cabrals, including a voluminous motions practice, multiple appeals, and other filings, many of them frivolous.

Based on this history, the Cabrals sought an order restricting Glinski from abusive litigation. Glinski did not file a written memorandum to the trial court as the court requested, nor did he appear at the hearing on this motion. The trial court entered orders restricting Glinski from abusive litigation practices against Nicholas and Beth Cabral by requiring the court's approval before making any future filings.

Glinski appeals the orders restricting him from engaging in abusive litigation, arguing for the first time that they are not supported by substantial evidence or the law. We disagree and affirm. We also award the Cabrals appellate fees and costs.

FACTS

Nicholas and Beth Cabral were granted guardianship of their granddaughter, CG, in January 2024. The trial court found that neither the Cabrals' daughter, CG's mother, nor Dustin Glinski, CG's father, was willing or able to provide for CG. The guardianship order identified Glinski's substance abuse, neglect, and domestic violence as reasons to limit Glinski's decision making and visitation. But Glinski maintained some visitation rights; Glinski was entitled to one phone or video visit each week or an in-person professionally supervised visit every other week. In order to have an in-person visit, Glinski was required to pass a supervised urinary drug test the morning of the visit. If Glinski wished to proceed to unsupervised visits, he was required to take and pass a substance abuse evaluation with a 7-panel hair and nail test, comply with all treatment recommendations, and show evidence of being clean and sober for at least three months.

Relations between the Cabrals and Glinski leading up to, during, and since the guardianship trial have been tense. The Cabrals each filed a petition for an anti-harassment protection order from Glinski under RCW 7.105 based on numerous death threats and harassing messages Glinski sent to them. The messages also included threats to engage the Cabrals in time-consuming and costly litigation. For example, Glinski said, "I hope you're ready for appeals and litigation for years to come I will put your [sh*t] in probate [b*tch]. . . . [T]hat is litigation to make you a broke [b*tch] that you are." Clerk's Papers (CP) at 19 (Ex. 4). "I hope you're ready for another lawsuit degenerates. Word has it one has already been filed against you two perpetrating demons. And there's more to come." CP at 21 (Ex. 6).

Despite having actual notice of the protection order hearing and opportunity to participate, Glinski did not appear at the hearing in February 2024, nor did he respond or contact the court.

The trial court entered protection orders for both Nicholas and Beth, finding that Glinski had subjected the Cabrals to unlawful harassment and represented a credible threat to their physical safety. As part of the protection order, the trial court ordered Glinski to obtain a mental health and chemical dependency evaluation and to complete a domestic violence perpetrator treatment program.

In August 2024, the Cabrals each filed a motion to restrict Glinski from the abusive use of litigation against them. In support of their motions, the Cabrals identified 15 filings made by Glinski between June 2023 and July 2024, each of which was either decided adversely to Glinski, voluntarily withdrawn, or is currently pending in this court. Many filings pertained to the guardianship case, including two motions for discretionary review by this court, which were each denied; a motion for vacation, which was stricken because Glinski filed it without his attorney's knowledge while he was represented; a notice of discretionary review to the Washington State Supreme Court, which was denied; a notice of appeal, which is currently pending in this court; a notice of appeal that Glinski filed with CG's mother's forged signature, which was dismissed; and three petitions to terminate the guardianship, each brought within four months of each other and all denied. Glinski also filed three petitions for a protection order, each brought within 3 months of each other and all denied. Glinski also filed a "Complaint re: Action for Injury to Child," and a complaint for damages alleging the unauthorized publication of personal identifying information, which were both dismissed with prejudice following summary judgment. CP at 61.

At an initial hearing on the Cabrals' abusive litigation petition, the superior court commissioner requested that the parties submit legal memoranda on whether the Cabrals qualified

as former or intimate partners to establish legal standing to bring a motion under RCW 26.51.020.[1]
The Cabrals filed a legal memorandum but Glinski did not file any written response.

The trial court held a hearing on the motion, but Glinski did not attend. *See* Br. of Appellant
at 12. In his appellate brief, Glinski claims he was "[u]nable to attend the hearing due to being
over 30 miles away from cell service for work." *Id.* The trial court proceeded on the motion based
on the Cabrals' written materials and statements at the hearing, without any written or in-person
response from Glinski.

The trial court found that the parties are considered "intimate partners" as defined under
former RCW 7.105.010(20)(c) (2024)[2] because as a result of the guardianship, they share custody
of a child in common. CP at 69. The trial court further found that there was "domestic violence
(unlawful harassment) against the [Cabrals] by [Glinski]" based on the 2024 protection order in
cause number 24-2-07254-06. CP at 70. The trial court further found Glinski's court actions
abusive because they were made primarily for the purpose of harassing, intimidating, or
maintaining contact with the Cabrals, and the abusive filings involved issues that had previously
been litigated and disposed of unfavorably to Glinski. The trial court also found that Glinski's
court actions were abusive because the allegations and other legal contentions made in those cases
were not warranted by existing law or a reasonable argument. Finally, the trial court found that the
parties had been to court about the same or substantially similar issues in the past five years.

---

[1] Glinski did not designate the verbatim report of proceedings from the hearing as part of the record
on appeal.

[2] At the time the order to restrict abusive litigation was filed, the definition of "intimate partners"
was codified at former RCW 7.105.010(20)(c). *See* LAWS OF 2024, ch. 298, § 9.

Based on these findings, the trial court granted both Beth's and Nicholas' motions to restrict abusive litigation and entered protective orders restricting Glinski from filing, initiating, advancing, or continuing litigation against the Cabrals until October 2026, without prefiling approval. The trial court also awarded $5,000 in attorney fees to both Beth and Nicholas.

Glinski appeals both orders restricting abusive litigation.

## ANALYSIS

Glinski argues that the trial court's orders are improper because the parties do not have an intimate partner relationship, Glinski has not been found to have committed domestic violence against the Cabrals, and Glinski's litigation has not been abusive. We disagree.

### I. GLINSKI'S FAILURE TO RESPOND AT THE TRIAL COURT

The record reflects that Glinski did not appear at the final hearing on the motions despite having actual notice of the hearing. And the record on appeal is devoid of any written response or memorandum opposing the motions. Accordingly, nothing in this record reflects that Glinski raised any of the issues he now raises on appeal to the trial court. The Cabrals urge us not to consider Glinski's arguments based on waiver.

Under RAP 2.5(a), we generally will not review claims raised for the first time on appeal, unless the party claiming the error can show an exception to that rule applies. *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). A party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3).

Filing restrictions implicate the constitutional right to access the courts. WASH. CONST. art. I, § 10. And if Glinski's arguments are correct, they would undermine the basis for the trial court's order. Thus, Glinski raises issues that, if correct, would establish a manifest constitutional error.

Accordingly, despite Glinski's failure to adequately argue his position in the trial court, we consider his claims.

## II. Order Restricting Abusive Litigation

We review a trial court's decision to restrict a litigant's access to the courts for abuse of discretion. *Bay v. Jensen*, 147 Wn. App. 641, 657, 196 P.3d 753 (2008). A court abuses its discretion when its ruling rests on untenable grounds or is made for untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We review a trial court's findings of fact to determine whether substantial evidence supports them and, if so, whether the findings of fact support the trial court's conclusions of law. *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939, 845 P.2d 1331 (1993). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). The party challenging a finding of fact bears the burden of showing that substantial evidence does not support the finding. *Nordstrom*, 120 Wn.2d at 939-40. We review conclusions of law de novo. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

In 2020, the legislature adopted RCW 26.51 as a way to address abusive litigation in family law cases. RCW 26.51.010. The legislature provided that the abusive litigation statute should be liberally construed to serve its purpose to prevent abusive litigation against people who have experienced domestic violence. RCW 26.51.900.

A party to litigation may seek an order restricting abusive litigation "if the parties are current or former intimate partners and one party has been found by the court to have committed domestic violence against the other party." RCW 26.51.030(1). When a party moves for an order

restricting abusive litigation, the court must "attempt to verify that the parties have or previously had an intimate partner relationship and that the party raising the claim of abusive litigation has been found to be a victim of domestic violence by the other party." RCW 26.51.040(1). If the court "verifies that both elements are true, or is unable to verify that they are not true," it must "set a hearing to determine whether the litigation meets the definition of abusive litigation." *Id*.

Under RCW 26.51.020(1)(a), litigation is abusive if

(i) The opposing parties have a current or former intimate partner relationship;

(ii) The party who is filing, initiating, advancing, or continuing the litigation has been found by a court to have committed domestic violence against the other party pursuant to: (A) An order entered under chapter 7.105 RCW or former chapter 26.50 RCW; (B) a parenting plan with restrictions based on RCW 26.09.191(4)(a)(iii); or (C) a restraining order entered under chapter 26.09, 26.26A, or 26.26B RCW, provided that the issuing court made a specific finding that the restraining order was necessary due to domestic violence; and

(iii) The litigation is being initiated, advanced, or continued primarily for the purpose of harassing, intimidating, or maintaining contact with the other party.

A.   Intimate Partner Relationship

Glinski argues that the Cabrals lack legal standing to move for an order restricting abusive litigation because the Cabrals and Glinski do not have an intimate partner relationship. We disagree.

The trial court found that the Cabrals and Glinski had an intimate partner relationship as defined in RCW 7.105.010. The statute defines "intimate partner" as "persons who have a child in common regardless of whether they have been married or have lived together at any time, unless the child is conceived through sexual assault." RCW 7.105.010(21)(c). On appeal, Glinski contends that the trial court erred by finding that the Cabrals and Glinski have a child in common based on the Cabrals' legal guardianship of CG. We disagree.

While most instances where RCW 7.105.010(21)(c) applies likely involve two biological parents, nothing in the definition limits the concept of a "child in common" to biological parents. Notably, the statute does not define intimate partners as "*parents* who have a child in common," or "persons who have a *biological* child in common." In the eyes of the law, under the current guardianship order, the Cabrals and Glinski have a child in common. The Cabrals have sole decision making authority and full residential custody of CG; Glinski's parental rights have not been terminated, and he has the potential for supervised visitation. These facts amounted to an intimate partner relationship, as defined in RCW 7.105.010(21)(c), between the Cabrals and Glinski. The fact that guardians are not specifically named in the definition of intimate partner is not fatal where the plain language is broad enough not to exclude guardians, and the legislature has called for liberal interpretation to effectuate the purpose of the act. In sum, the Cabrals had legal standing to move to restrict Glinski's abusive litigation.

B.      Domestic Violence

Glinski also argues that the trial court erred by finding that he had committed domestic violence against the Cabrals. Specifically, he contends that the anti-harassment protection order entered against him does not meet the requirements of RCW 26.51.020(1)(a)(ii)(A) because there was no prior finding that he committed domestic violence against the Cabrals.[3] We disagree.

RCW 26.51.020(1)(a)(ii)(A) requires a finding that "[t]he party who is filing, initiating, advancing, or continuing the litigation has been found by a court to have committed domestic violence against the other party pursuant to: (A) An order entered under chapter 7.105 RCW or

---

[3] Glinski also argues that there were no restrictions in the guardianship order based on domestic violence. While that is not true, the trial court's order restricting abusive litigation did not base its finding of domestic violence on the guardianship order (although it could have).

former chapter 26.50 RCW." The anti-harassment protection order entered against Glinski is an order entered under chapter 7.105 RCW; CP at 53. The remaining question is whether the trial court found Glinski had committed domestic violence therein.

"Domestic violence" is defined as "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; *unlawful harassment*; or stalking of *one intimate partner by another intimate partner*. RCW 7.105.010(10)(a) (emphasis added).[4] It is undisputed that the trial court found that Glinski had unlawfully harassed the Cabrals. As previously discussed, the Cabrals and Glinski are intimate partners for purposes of this analysis. And the trial court's anti-harassment order required Glinski to participate in domestic violence perpetrator treatment. Thus, substantial evidence supports the trial court's finding that Glinski had committed domestic violence against the Cabrals based on the anti-harassment protection order.

The same trial court commissioner entered the protection order and the order restricting abusive litigation and was thus familiar with the facts of both cases and the court's findings. Under these circumstances, we hold that substantial evidence supported the trial court's finding that Glinski had committed domestic violence against the Cabrals.

C.      Abusive Litigation

Glinski also challenges the trial court's finding that his litigation constituted abusive litigation. Br. of Appellant at 20. We disagree.

---

[4] At the time the anti-harassment order was filed, the definition of "domestic violence" was codified at former RCW 7.105.010(9)(a) (2024). *See* LAWS OF 2024, ch. 298, § 9. We cite the current version here as the definition has not changed.

The abusive litigation statute creates a rebuttable presumption that litigation is being initiated, advanced, or continued "primarily for the purpose of harassing, intimidating, or maintaining contact with the other party" if there is evidence that "[t]he same or substantially similar issues between the same or substantially similar parties have been litigated within the past five years," or if courts have sanctioned the alleged abusive litigant "for filing one or more cases, petitions, motions, or other filings[] that were found to have been frivolous, vexatious, intransigent, or brought in bad faith involving the same opposing party." RCW 26.51.050(1), (3).

Here, the trial court found that Glinski's court actions were abusive because the issues at the basis of his actions had previously been filed, litigated, and disposed of in other actions; the allegations and legal contentions made in the case were not warranted by law or reasonable argument; and the parties had been to court about the same or substantially similar issues in the past five years. These findings were supported by substantial evidence.

The Cabrals detailed 15 filings Glinski made over the course of about a year, and Glinski prevailed on none of them.

Despite not challenging the Cabrals' contentions before the trial court, Glinski now argues that these numerous filings cannot constitute abusive litigation because CR 11 sanctions were never issued or threatened, and because he thoroughly researched each filing. But neither previous sanctions nor lack of research is required to find that a party has engaged in abusive litigation under RCW 26.51.050.

The trial court found that Glinski filed the actions primarily for the purpose of harassing, intimidating, or maintaining contact with the Cabrals. The court found that the filings repeated issues that had already been litigated and disposed of in the Cabrals' favor. And the trial court

10

found the actions were not warranted by existing law or reasonable argument. Each of these was a valid reason to find abusive litigation under the abusive litigation statute. These findings are supported by the record—including the multiple messages Glinski sent the Cabrals threatening expensive and lengthy litigation—and Glinski did not show in this record that he provided the trial court with any evidence to the contrary.

On this record, we hold that the trial court did not err by finding Glinski's court filings constituted abusive litigation. Because Glinski cannot show error, he has failed to establish a manifest error affecting a constitutional right. We affirm the trial court's orders restricting Glinski from further filing abusive litigation.

## ATTORNEY FEES AND SANCTIONS

The Cabrals seek attorney fees and costs on appeal. Under RAP 18.1, a party may seek reasonable attorney fees on appeal. We may award attorney fees on appeal if a contract, statute, or recognized ground in equity permits recovery of attorney fees at trial and the party substantially prevails. *Burrowes v. Killian*, 195 Wn.2d 350, 363, 459 P.3d 1082 (2020). Here, the abusive litigation statute requires an award of attorney fees and costs without regard for whether the arguments are frivolous. RCW 26.51.060(2)(b) (court must award "reasonable [attorney] fees and costs of responding to the abusive litigation"). Because the Cabrals prevail on appeal and this appeal is part of an ongoing pattern of abusive litigation, we grant their requests for attorney fees and costs.

The Cabrals also request that we restrain Glinski from engaging in additional appellate litigation involving them without first having any filings screened and authorized by a commissioner of our court. Such relief is within our discretion and has been imposed in the past.

*See* Ord., *Gallery Belltown Condo. Ass'n v. Roland Ma*, No. 100725-6 (Wash. July 13, 2022). In *Gallery*, the Supreme Court declared the petitioner to be a vexatious litigant based on his lengthy history of frivolous filings in the court, which were undeterred by the imposition of sanctions. The Supreme Court, therefore, prohibited the petitioner from filing any future filings with the court without first obtaining permission from the court clerk. *Ord.,* No. 100725-6, at 1.

The Cabrals request that we impose similar equitable sanctions against Glinski. To date, Glinski has filed two interlocutory appellate matters related to the guardianship case, one in this court and another in the Supreme Court (No. 58181-7-II and No. 102369-3). Both cases were decided in favor of the Cabrals. Glinski also has a pending appeal in the guardianship case, No. 59281-9-II, which was set for consideration by this court on the January 2026 docket. In that case, our court found that Glinski had forged CG's birth mother's signature on a notice of appeal. This is in addition to Glinski's abusive litigation tactics in the trial court that are recited above.

Based on Glinski's extensive litigation against the Cabrals, we find that Glinski has habitually and persistently used this court's, and the trial court's, processes to hinder the administration of justice, delay proceedings, place an unacceptable burden on court staff, impede the court's essential functions, and harass the Cabrals. We find that Glinski has impeded the orderly conduct of proceedings and abused the judicial process in multiple cases.

We conclude that Glinski is a vexatious litigant. Under RAP 18.9, we have authority to "condition a party's right to participate" in appellate cases in this court "on compliance with terms of an order or ruling." RAP 18.9(a). We also have inherent authority to control the conduct of litigants in this court when they have impeded the orderly conduct of proceedings. *Yurtis v. Phipps*, 143 Wn. App. 680, 693, 181 P.3d 849 (2008). We have discretion to place reasonable restrictions

on any litigant who abuses the judicial process, so long as the restrictions are no more than necessary to remedy the vexatious conduct. *Id*.

In addition, we are aware that sanctions and attorney fee awards only serve as a deterrent to frivolous or harassing litigation if they are paid. In light of the findings discussed above, we order the clerk of this court not to accept further notices of appeal or discretionary review from Glinski in cases involving the Cabrals until he has submitted proof that all of his sanctions and attorney fees imposed in all cases involving them have been paid. Further, Glinski must submit with any new notice of appeal or notice of discretionary review a pleading consisting of no more than 2500 words stating the basis for the appeal or discretionary review in basic terms. Any discretionary review must be based only on RAP 2.3(b)(4). No other filings will be accepted regarding the notice of appeal or notice of discretionary review unless and until the notice is accepted for filing.

Our commissioner must reject any notice of appeal or notice of discretionary review from Glinski unless Glinski has shown that all of his sanctions and attorney fees in cases involving the Cabrals have been paid. Our commissioner must reject any notice of appeal or notice of discretionary review from Glinski that is not accompanied by the pleading described above. Our commissioner must reject any notice of discretionary review from Glinski that relies on any basis other than RAP 2.3(b)(4).

Our commissioner may reject any notice of appeal or notice of discretionary review that is based on a previously resolved legal issue; or that is frivolous or lacks facial merit. In order to reduce the burden of multiple filings on our court, our commissioner may reject any amended or supplemental notice of appeal or notice of discretionary review. Our commissioner may reject any

notice of appeal or notice of discretionary review that is filed after the deadline established in the rules of appellate procedure.

CONCLUSION

We affirm. We order Glinski to pay attorney fees on appeal in an amount to be set by a commissioner of this court. And we order the clerk of this court not to accept for filing further notices of appeal or discretionary review from Glinski in cases involving the Cabrals until he has submitted proof that all of his sanctions and attorney fees imposed in all cases involving them have been paid. Finally, Glinski must submit with any new notice of appeal or notice of discretionary review a pleading consisting of no more than 2500 words stating the basis for the appeal or discretionary review in basic terms. Any discretionary review must be based only on RAP 2.3(b)(4). No other filings will be accepted regarding the notice of appeal or notice of discretionary review unless and until the notice is accepted for filing after review by a commissioner of this court that is consistent with the restrictions discussed above.

No. 60613-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

VELJACIC, A.C.J